HOWARD, Appellant, v. WARD, Respondent.

(139 N. W. 771.)

1. **Attorney and Client—Lien for Compensation—Notice—Statutory Provisions.**

   Under Pol. Code, Sec. 702, concerning attorneys' liens, the giving of notice of the lien by the claimant attorney to the adverse party or his attorney is essential to create a lien upon moneys due his client in the hands of such party or attorney.

2. **Same—Contract for Contingent Fees—Fraudulent Settlement of Litigation by Parties—Necessity of Judgment.**

   Where an attorney contracts with his client for a contingent fee for services in an action, the cause of action not being assignable, and his client, plaintiff, settles the suit directly with defendant, such settlement, though fraudulent as to his attorney, bars a prosecution of the action, and the attorney has no lien, before judgment, upon the cause of action, even though plaintiff, under the contract, gave his attorney absolute control of the case and agreed to make no settlement without his knowledge and consent.

3. **Same—Settlement Without Attorney's Consent—Public Policy.**

   A contract between attorney and client that purports to prohibit the latter from settlement of a pending suit without the attorney's consent is against public policy and void.

4. **Settlement Without Attorney's Consent—Contract Otherwise Valid.**

   Such a contract, however, does not void the contract in toto.

5. **Attorney's lien on Cause of Action.**

   A contract employing an attorney to prosecute an action for a contingent fee, the cause of action not being assignable, creates no lien, legal or equitable, on the cause of action.

6. **Action—Cause of Action—Non-assignable Cause of Action.**

   A right of action for criminal conversation does not survive the death of the person injured, and therefore is not assignable.

7. **Attorney's Lien—Fraudulent Settlement by Party—Power of Court to Vacate Settlement—Judicial Discretion—Public Policy—Property Right in Cause of Action.**

   Where, contrary to the terms of an attorney's contract for a contingent fee, the parties, in fraud of such attorney, settle the case for the purpose of defeating the lawful and proper compensation of the attorney for services rendered, even where no lien exists by statute or contract, the trial court has power, in its discretion, to vacate such settlement; but the exercise of such power is subject to considerations of sound public policy. Held, further, the trial court did not in this case err in exercise of such discretion. Held, further, that such attorney acquired,

by his contract, no property right, legal or equitable, in the cause of action itself.

(Opinion filed February 10, 1913.)

Appeal from Circuit Court, Minnehaha County.   Hon. JOSEPH W. JONES, Judge.

Action by F. T. Howard against E. C. Ward, for criminal conversation.   From an order refusing to set aside a settlement of the case between plaintiff and defendant, and from an order refusing to render judgment against defendant for the purpose of allowing George W. Egan, plaintiff's attorney, to enforce his claim for attorney's fees, plaintiff appeals, the appeal being in the interest of appellant's attorney.   Affirmed.

*Geo. W. Egan,* for Appellant.

Plaintiff's attorney may continue suit against the defendant to recover the amount of his fee after plaintiff has dismissed. Jones v. Morgan, 39 Ga. 310, 99 Am. Dec. 458; Cameron v. Boeger, 93 Am. St. Rep. Note "D" page 173.

The proper course for the attorney is to proceed with the suit, notwithstanding the fraudulent settlement, for the purpose of enforcing his claims.   National Exhibition Co. v. Crane, 167 N. Y. 505, 60 N. E. 768; Jackson v. Stearns et al., (Oreg.) 84 Pac. 798.

It is not the contention of counsel that judgment should have been rendered for the full amount demanded in the complaint, but we do contend that under sub-section 2, of section 237 of the Code of Civil Procedure, the Court should have taken proof or appointed a referee to take proof to ascertain the amount paid by respondent to appellant in settlement of his damages, for the purpose of entering up judgment in favor of appellant's counsel and against the respondent for one-half of said amount, as provided by the contract.   Newport Rolling Mill Co. v. Hall, 144 Southwestern, 760.

*Joe Kirby,* for Respondent.

No claim is made by Mr. Egan that he has taken any of the necessary steps in this case to establish a lien on any claim which his client had against Mr. Ward.   Therefore, the statutory provision with regard to attorney's liens can be passed, except so far as it is my contention that such statute is exclusive of any other remedies.

No claim is made by Mr. Egan that he had communicated to

Mr. Ward, prior to the time Mr. Howard had seen fit to dismiss the action, that he had a contingent contract with his client, but if he had done so, according to my view of the case, he could gain but little benefit therefrom.

That no lien existed at common law in favor of an attorney against the adverse party prior to judgment, nor against his client except on property belonging to his client and in his hands, the latter lien being dependent on possession. Therefore, subdivision 3 of section 702 Political Code is the only means of procuring an attorney's lien against the adverse party prior to judgment, and no claim is made by Mr. Egan that he had complied with this provision of our written law. I Parson Contract 116; III Parson Contract 269; Lamont v. Railway Co., 47 Am. Rep. 268; People v. Tioga, 19 Wendell, 73; Coughlin v. Railway Co., 71 N. Y. 443; Kusterer v. Beaver Dam, 56 Wis. 471.

Subdivision 3, section 702, Political Code, provides that an attorney has a lien upon "money due his client in the hands of the adverse party, or attorney of such party, in an action or proceedings in which the attorney claiming the lien was employed from the time of giving notice in writing to such adverse party."

This clearly does not, in any event, include unliquidated torts, for that is not "money in the hands of the adverse party." It is nothing but a chose in action. Again, even if it were money, the lien would only exist "from the time of giving notice in writing to such adverse party." Pirie v. Harkness, 3 S. D. 178; Courtney v. McGavock, 23 Wis. 620; Lavender v. Atkins, 29 N. W. (Neb.) 467; Forebush v. Leonard, 8 Minn. 303.

The action being based upon a personal tort, not assignable and not passing by death to plaintiff's estate, no lien can be acquired therein.

This question is discussed in the cases above cited; and in Henchey v. Chicago, 41 Ill. 136; Oliwell v. Verdenhalven, 7 N. Y. Sup. 99.

The contract under which Mr. Egan claims is champertous and void. This is too well established to require, in my opinion, discussion. Not only does the attorney encourage litigation by taking the case on "spec," and by agreeing to pay expenses, but worse still he ties the plaintiff's hands so far as the contract goes by depriving him of any privilege of settlement. Kansas City Ry.

Co., v. Service, 94 Pac. 262; Moreland v. Devenney, 83 Pac. 1097; Caughlin v. Ry. Co., 71 N. Y. 441; Swanson v. Mining Company, 13 Fed. 215; Hanna v. Coal Company, 31 N. E. 846; Burho v. Carmichael, 135 N. W. (Minn.) 386.

Can there be any doubt as to the purpose of the language contained in the contract now before the court? The plaintiff himself, Mr. Howard, has seen fit to dismiss, but Mr. Egan, under his contract, claims the right to prolong the litigation. Not only was the contract of Mr. Egan against public policy, for the grounds I have pointed out, but such contract in other respects violates section 199 of our Penal Code.

It appears to be a case, from the whole record, where Mr. Egan agreed with Mr. Howard to pay the expenses of the suit so that Howard had nothing invested therein, and they were to take half each.

SMITH, J. Appeal from the circuit court of Minnehaha county. On the 13th day of January, 1912, one F. T. Howard instituted a crim. con. action for $25,000 damages against the defendant, having employed George W. Egan, appellant, as his attorney. Three days later plaintiff settled and abandoned the action. Thereafter, on the 23d day of March, 1912, appellant Egan brought on for hearing before 'Hon. Joseph W. Jones, judge of the Second judicial circuit court, a motion to set aside an alleged settlement of the cause of action and dismissal of the action, on the ground that such settlement was illegal and unlawful, "and against the rights of George W. Egan, and was accomplished without his knowledge or consent, and by wrongful and unconscionable methods effected for the purpose of defeating and defrauding George W. Egan out of his rights as an attorney and for his services and money already expended in this case." The affidavit served, and upon which the motion was founded, is very lengthy, but alleges, in substance, that George W. Egan was employed by the plaintiff Howard under a written contract to act as his attorney in the case; that he made a thorough investigation of the facts charged, and was satisfied that plaintiff had a good cause of action against defendant; that he prepared a summons and complaint based upon such facts, and caused the same to be served on defendant on the 13th of January, 1912; that, before said complaint was served, he sent a note to the defendant advising him of the contemplated suit, and suggesting that,

if defendant cared to see plaintiff's counsel before any papers were filed he.could do so at his office; that within a few moments after defendant received said note affiant was called up by one Kirby, representing defendant as his counsel, who requested affiant to proceed no further until he could see affiant at his office, to which affiant consented; that on the morning of January 13th Kirby came to affiant's office and spoke about settling the case, but that affiant informed him his clients were not in town, but were at Canton, whereupon Kirby left the office, and, without affiant's knowledge or consent, went to Canton, and opened negotiations for a settlement of the case; that on the evening before the summons was served defendant saw affiant personally, and asked him to do nothing until he saw Mr. Kirby on Saturday; that on Saturday afternoon the summons and complaint were served: The affiant then states: "That on Sunday and Monday the defendant herein, E. C. Ward, with the connivance and support of Joe Kirby, knowing full well that I was the attorney in the case, and had an interest therein, went behind me and against my interests and without my knowledge, by threats as I am advised and verily believe of prosecution of the wife for adultery, caused and accomplished a settlement, and caused said plaintiff and his wife to get out covertly and secretly from the city of Sioux Falls, and sent the plaintiff to my offices under false pretenses, seeking to secure from me the original letters, which I had and now have, that the defendant Ward had written to plaintiff's wife, and also sought to have the plaintiff by false representations secure from me the affidavits which he and his wife had made, setting forth the facts to me and upon which I acted in this case. * * * That said settlement was effected by the defendant with the connivance and assistance of said Joe Kirby, for the purpose and with the object of defrauding George W. Egan out of his attorney's fees. * * * That said settlement should be set aside and George W. Egan should be established in his rights in this case under the terms of his written contract for contingent fee, a copy of. which written contract is attached to this affidavit and made a part thereof, and which defendant well knew George W. Egan had from the plaintiff at the time said settlement was made." The contract referred to is as follows:

"Contract and Agreement."

"Made and entered into this 11th day of January, 1912, by and

between F. T. Howard, party of the first part, and George W. Egan, party of the second part, witnesseth:

"First party this day employs George W. Egan to be and appear as his attorney in his suit for damages to be brought by said first party against E. C. Ward for damages for alienation of first party's wife's affections. Said suit to be based on criminal conversation.

"And for said services to be well and truly performed first party F. T. Howard agrees to give and by these presents binds himself to give and to pay unto the second party the sum of fifty per cent (50%) of whatever amount may be recovered either by suit or settlement in said case.

"Second party on his part agrees to give his full time to the management and preparation of said case and to use his best ability in the management of the same, and to pay all his own expenses in connection therewith. Also agrees, that, if no recovery is made, no charges for attorney's fee shall be made.

"First party agrees to give second party absolute control of said case and agrees to abide by his judgment, whether in suit or settlement, and agrees to make no settlement without the knowledge, consent, and privilege of second party, and agrees to submit all matters of suit or settlement to second party and agrees that second party shall have a lien on whatever judgment may be recovered for the amount of the said fifty per cent. (50%) as herein contemplated."

On March 25, 1912, Judge Jones, entered an order denying the application and motion, to which ruling Mr. Egan excepted. Thereafter, on the 8th day of April, 1912, Mr. Egan moved the court for an order that said plaintiff F. T. Howard have judgment against the defendant E. C. Ward for the sum of $25,000 for the purpose of allowing George W. Egan, plaintiff's counsel, to enforce his claim for attorney's fees as stipulated in his contract. of employment with plaintiff. The motion was based on the following grounds. First. That defendant was in default. Second. That the settlement of the action entered on the 15th day of January, 1912, was fraudulent as set forth in the affidavit of George W. Egan on file and hereinbefore referred to. Motion was upon all the pleadings, files, and papers in the action on file with the clerk of court. On April 8, 1912, the court entered an order denying

plaintiff's motion, which order contained the following recital: "It appearing to the court that the plaintiff had ordered and requested dismissal of this action, and does not now seek to prosecute the same, and that this court has heretofore refused said Egan the right to prosecute said action for the purpose of protecting his alleged claim for fees, * * * it is ordered that said application be and the same is hereby in all things denied." This ruling was excepted to. Appellant assigns these rulings as error.

Respondent served and filed a motion to dismiss the appeal, because, first, the orders are not appealable; second, the appeal is from two separate and independent orders, and is double, also because of certain alleged irregularities in the abstract.

The questions raised by the motion to dismiss the appeal need not be considered or decided at this time. It seems to us to better serve the ends of justice, that this court finally determine the rights of the parties involved, rather than to dispose of the case upon technical questions of practice. And, in view of the conclusion reached upon the merits, respondent can have no ground of complaint because the questions raised by the motion to dismiss the appeal remain undetermined. The motion to vacate the settlement, and the motion for leave to proceed with the action and take judgment against defendant, for the purpose of enforcing the alleged claim for attorney's fees, are both founded upon the allegation that the settlement was for the sole purpose of defrauding appellant out of his fees, and present byt a single question for consideration upon this appeal. Appellant's contention is stated in his brief as follows: "As shown by the affidavit of George W. Egan, * * * the appellant, conniving with respondent and his counsel, entered into an agreement and effected a settlement of this action with them for the sole purpose of defrauding appellant's counsel out of his fees."

[1] Subdivision 3, § 702, Political Code, provides that an attorney has a lien for a general balance of compensation "in and for each case, upon money due his client in the hands of the adverse party, or attorney of such party in an action or proceeding in which the attorney claiming the lien was employed, from the time of giving notice in writing to such adverse party, or attorney of such party if the money is in the possession or under the control of such attorney, which notice shall state the amount claimed, and

in general terms for what services." The giving of the notice is essential to create a lien for compensation for services, under the provisions of this statute. It is not alleged that any written notice was given respondent or his counsel, and appellant makes no claim under the statute. His rights, if any, are founded wholly on the written contract above set forth.

[2] Numerous decisions are cited by both appellant and respondent to sustain their respective contentions. The case of Coughlin v. N. Y. C. & H. R. R. Co., 71 N. Y. 443, 27 Am. Rep. 75, is so exactly in point, is so often cited as a leading case, by the decisions of other courts, and so fully meets our approval, that we have taken the liberty to quote somewhat extensively. The principles involved in the cases cited by appellant, as well as those of respondent, are fully considered and discussed by that distinguished court. The decision in our judgment should be held decisive of this appeal. In that case a firm of attorneys entered into a contract with one Strong, who had been injured while a passenger on defendant's railroad, by which the attorneys agreed to bring suit against the railroad company and to divide the damages, which might be recovered, and agreed, if nothing was recovered in the action, they should receive nothing for their services. At the time of service of the summons, notice was given the defendant that said firm were interested in the cause of action for their services to the extent of one-half thereof. Thereafter plaintiff, without the knowledge of his attorneys, settled the claim. The court held the settlement to be fraudulent and collusive, as against plaintiff's attorneys, but also held the settlement to be a bar, and that the attorneys had no right to prosecute the action for the sole purpose of reaping the fruits of their agreement with their client. The court said: "Generally, a plaintiff who has a cause of action against a defendant may release and discharge it upon such terms as are agreeable to him. This he may do while the action is pending, and after judgment he may cancel and discharge the judgment. In all this generally he infringes upon no privilege and violates no right of his attorney. But since the time of Lord Mansfield it has been the practice of courts to intervene to protect attorneys against settlements made to cheat them out of their costs. If an attorney has commenced an action and his client settles it with the opposite party before judgment, collusively, to deprive him of his costs, the

court will permit the attorney to go on with the suit for the purpose of collecting his costs. * * * There are many cases where this has been allowed to be done. It is impossible to ascertain precisely when this practice commenced, nor how it originated, nor upon what principle it was based. It was not upon the principle of a lien, because an attorney has no lien upon the cause of action before judgment for his costs; nor was it upon the principle that his services had produced the money paid his client upon the settlement, because that could not be known, and, in fact, no money may have been paid upon the settlement. So far as I can perceive, it was based upon no principle. It was a mere arbitrary exercise of power by the courts, not arbitrary in the sense that it was unjust or improper, but in the sense that it was not based upon any right or principle recognized in other cases. The parties being in court, and a suit commenced and pending, for the purpose of protecting attorneys who were their officers and subject to their control, the courts invented this practice and assumed this extraordinary power to defeat attempts to cheat the attorneys out of their costs. The attorney's fees were fixed and definite sums, easily determined by taxation, and this power was exercised to secure them their fees. After judgment the attorney who has procured it has a lien upon it for his costs. This lien is upheld upon the theory that the services and skill of the attorney have produced the judgment. There is, then, something upon which a lien can attach, and the courts uphold the lien by an extension to such cases of the principle which gives a mechanic a lien upon a valuable thing which, by his skill and labor, he has produced. * * * If notice be given of this lien, then the defendant in the judgment cannot defeat it by a clandestine or collusive payment to the plaintiff. Before our Code of Procedure, I believe, there was no case where the lien was upheld for more than the taxable costs. But the Code (section 303) provides that 'all statutes establishing or regulating the costs or fees of attorneys, solicitors and counsel in civil actions and all existing rules and provisions of law restricting or controlling the right of a party to agree with an attorney, solicitor or counsel for his compensation are repealed; and hereafter the measure of such compensation shall be left to the agreement, express or implied, of the parties.' And now it is held that after judgment an attorney may have a lien thereon for any compensation which his client has

agreed to pay him, and to that extent it is said he may be regarded as an equitable assignee of the judgment. * * * A person owning a judgment for the recovery of money may give his attorney, or any other person, by agreement, rights and equitable interests therein which the defendant therein charged with notice must respect. So, if the cause of action before judgment be in its nature assignable, the owner of it may assign, and, by agreement, create legal and equitable interests therein, and such agreements may now be made with his attorneys as well as with other persons, and, when such interests have been created and notice given of them, they must be respected. But what I maintain is that before judgment, in the absence of any agreement, the attorney has not now and never had any lien upon, or interest in, the cause of action; and when the cause of action is like this, such as by its nature is not assignable, the party owning it cannot by any agreement give his attorney or other person any interest therein. In People v. Tioga C. P., 19 Wend. [N. Y.] 73, Cowen, J., said: 'Assignments of personal injuries must still be regarded as mere covenants or promises which we cannot directly protect against the interference of the immediate party, though the defendant have full notice of the effort to assign. If the person professing to assign will do prejudice to the right by extinguishing or impairing it, the party with whom he deals must be left to his action for damages according to the nature of the undertaking.' Mere personal torts of this kind cannot be separated from the person upon whom they are inflicted, they die with him. Here there was not even any agreement by plaintiff to assign any portion of the claim to his attorneys. The agreement executed did not purport to give them any present interest in the cause of the action. It was simply an executory agreement that the attorneys should share in the damages recovered; the cause of action remaining intact in the plaintiff. Still an agreement to divide the recovery in such a case would attach itself to the judgment when recovered, and give the attorney an equitable interest therein. It is therefore beyond dispute that the plaintiff's attorneys had neither a legal nor equitable interest by way of any assignment or lien on the cause of action. The defendant was not asking any favor of the court. It was in court simply insisting upon its settlement with the plaintiff as a defense to his cause of action. Therefore, if the attorneys are entitled to the protection

they now seek, it is only by the exercise of the extraordinary power of the court to which I have first above alluded, and I am prepared to say that such power should not be exercised in a case like this. It has not been conferred upon the courts by statute, usage, or common law. Its exercise to secure to an attorney the statutory fees, small in amount and easily ascertainable, was just and proper, and could lead to no abuse. But to exercise it so as to enforce all contracts between clients and attorneys, however extraordinary, is quite another thing. Here the attorneys were contractors. They took the job to carry this suit through, and to furnish all the labor and money needed for that purpose, and they are no more entitled to the protection which they now seek than any other person not a lawyer would have been, if he had taken the same contract. When a party has the whole legal and equitable title to a cause of action, public policy and private right are best subserved by permitting him to settle and discharge that, if he desires to, without the intervention of his attorneys." The rule announced above is approved and followed by the Wisconsin Supreme court in Kusterer v. City of Beaver Dam, 56 Wis. 471, 14 N. W. 617, 43 Am. Rep. 725.

[3] One further proposition discussed upon this appeal may be referred to here. Appellant's contract with his client prohibits settlement without appellant's consent. Provisions of this character are universally held to be against public policy and void. Kansas City Ry. Co. v. Service, 77 Kan. 316, 94 Pac. 262, 14 L. R. A. (N. S.) 1105; Newport Rolling Mill Co. v. Hall, 147 Ky. 598, 144 S. W. 760, and authorities there cited; Williams v. Ingersoll, 89 N. Y. 508; Davis v. Webber, 66 Ark. 190, 49 S. W. 822, 45 L. R. A. 196, 74 Am. St. Rep. 81; North Chicago St. R. R. Co. v. Ackley, 171 Ill. 100, 49 N. E. 222, 44 L. R. A. 177; Lipscomb v. Adams, 193 Mo. 530, 91 S. W. 1046, 112 Am. St. Rep. 500.

[4] Respondent also contends that such a provision avoids the entire contract; citing Moreland v. De Venney, 72 Kan. 471, 83 Pac. 1097. But the contrary is held in Newport Rolling Mill Co. v. Hall, supra, on grounds which we approve. See Jackson v. Stearns, 48 Or. 25, 84 Pac. 798, 5 L. R. A. (N. S.) 390.

[5] Under all the authorities, the contract between the attorney and client in the case at bar created no lien either legal or equitable upon the cause of action.

[6] The established rule is that a right of action to recover damages in this class of cases does not survive, and therefore is not assignable.   Garrison v. Burden, 40 Ala. 513.

[7]   It may be conceded, under the authorities, that a trial court possesses the power to vacate a settlement fraudulently made for the purpose of defeating the lawful and proper compensation of an attorney for services rendered, even where no lien exists by statute or contract.   But in such cases the power is exercised as a matter of judicial discretion, and its exercise is subject to considerations of sound public policy.

We are of opinion the trial court in this case did not err in the exercise of this discretion.   Appellant, by this contract, acquired no property right, legal or equitable, in the cause of action itself, and we believe the trial court exercised its discretion both wisely and justly in refusing to permit the continuance of litigation of the character involved, for the sole purpose of permitting appellant to realize profits under his contract.   The orders of the trial court are therefore affirmed.