DAVIS *v.* WEBBER.

was given the lightest punishment fixed by the statute, its refusal is not reversible error.

Affirmed.

DAVIS *v.* WEBBER.

Opinion delivered February 11, 1899.

1. ATTORNEY AND CLIENT—CHAMPERTY.—A contract between an attorney and client, allowing the former a contingent interest in the subject-matter of litigation as compensation for his professional services, is not void for champerty, though the courts will scrutinize such a contract closely to see that the attorney has taken no unjust or unfair advantage of his client. (Page 193.)

2. SAME—AGREEMENT OF CLIENT NOT TO SETTLE.—A stipulation in a contract for an attorney's fee for prosecuting a suit that the client shall not settle the suit without the attorney's consent is void as against public policy; and if such stipulation is not severable from the rest of the contract, but is an inducement for entering on it, the entire contract is void. (Page 197.)

3. SAME—FEE FOR PROFESSIONAL SERVICES.—Where a contract fixing the amount of an attorney's fee for professional services is void as against public policy by reason of a stipulation that the client shall not compromise without the attorney's consent, the court will grant compensation for the attorney's services, under the ·rule of *quantum meruit.* (Page 198.)

4. EVIDENCE—REASONABLENESS OF ATTORNEY'S FEE.—Notwithstanding a contract fixing the amount of an attorney's fee is void on account of a stipulation that the client shall not settle without the attorney s consent, the court may look to such contract to ascertain what the parties themselves thought such services were reasonably worth. (Page 199.)

5. SAME.—In determining what an attorney's services were worth in a particular case, the professional standing of the attorney, the amount of his professional business, and the nature and importance of the controversy in which the services were rendered, are all to be considered. (Page 199.)

6. ATTORNEY'S LIEN—PRACTICE.—In a suit to enforce an attorney's lien for services rendered in a certain suit on property received as a result of that suit, it is error to include in the judgment a fee for services rendered in a different suit. (Page 201.)

Appeal from Miller Circuit Court in Chancery.

RUFUS D. HEARN, Judge.

*Williams & Arnold*, for appellant.

The rights of an attorney must not conflict with the interests of his client. Weeks, Attys. §§ 258, 271; 57 Ark. 93; 9 Fed. 721. Dealings between attorney and client are scrutinized closely, and the *onus* is upon the attorney to show fairness. Weeks, Attys. §§ 268, 273, 276, 277; 1 Am. & Eng. Enc. Law (2 Ed.), 333; Story, Eq. §§ 310, 311; 5 Johns. Ch. 48; 7 Atl. 842. The contract that appellee should have the penalty as his fee is void. Weeks, Attys. 724, 725; 49 N. E. 222. The agreement that the client would not compromise without the consent of the attorney was void, as against public policy. Greenhood, Pub. Pol. 774; 25 Ia. 487; 21 Ia. 523; 15 Ohio, 715. The opinions of witnesses as to reasonableness of fees, while merely advisory, should be considered in connection with the other facts in the case. 33 S. W. 777; Weeks, Attys. 697. Even if the contract was valid, the purpose having failed, recovery could not be had on its terms, but only on a *quantum meruit*. 23 S. W. 790; 22 S. W. 85; 92 Ill. 491; Weeks, Attys. 699; 1 Am. & Eng. Enc. Law (2 Ed.), 427; 8 Misc. Rep. (N. Y.) 533; 73 Md. 9; 7 W. Va. 202; 59 Barb. 574; 41 N. Y. Sup. Ct. 452; 28 S. W. 227; 20 Atl. 127; 33 Ark. 545. Contract is to be construed in the light of surrounding circumstances. 22 S. W. 85; 29 N. W. 838; 107 U. S. 442; 95 U. S. 23; 22 Wall. 111. A set-off can not be pleaded against a set-off. 22 Am. & Eng. Enc. Law, 236.

*S. R. & Ashley Cockrill*, for appellee.

The contingent character of the fee did not make the contract void for champerty. 17 Ark. 609, 663, *et seq.*; 33 Ark. 545. Appellant has an interest in the judgment, to the extent of the fee contracted for. Sand. & H. Dig. § 4223; 38 Ark. 385; 49 Ark. 86, 95; 36 Ark. 591. Even if the contract were void, the court could look to it for the purpose of ascertaining what the parties deemed a reasonable fee. 125 Ind. 359, 361; 36 Minn. 473; 26 N. Y. 279. The amount awarded should be allowed to stand, even on the basis of *quantum meruit*, all the

facts being considered. 1 Laws. R. & Rem. § 198; 44 Ark. 279; 33 Ark. 548. The contract was valid. 33 Ark. 545; 39 Ark. 340. Appellant's acquiescence estops him to deny his liability. 21 Ark. 420. A defective complaint will be treated as amended to conform to evidence introduced without objection. 54 Ark. 289; 59 Ark. 215; 53 Ark. 263; 24 Ark. 326; 57 Fed. 693. On appeal the presumption is that the irregularity of the pleading was waived. 39 Minn. 365; 51 Minn. 162.

WOOD, J. This is a suit by Webber against Davis to recover the sum of $2,885.50 for services, as an attorney at law, under a certain contract, and to declare and enforce a lien for such sums upon certain property. The contract is as follows: "Whereas, by the judgment of the Miller county circuit court in the case of Mansur v. Tebbetts Implement Co., and Hargadine-McKittrick Dry Goods Co. v. Robt. Ellis, in which N. L. Davis was interpleader, the proceeds of the sale of the stock of goods bought from said Ellis by said Davis was adjudged to be the property of N. L. Davis, and ordered to be immediately turned over to him by A. S. Blythe, sheriff, and a similar order was issued by the Hempstead circuit court on the other attachments against Ellis, taken to that county on a change of venue; and demand having been made on said sheriff, and he failing to pay the same, it becomes necessary to proceed against him on his official bond, and the said Davis having employed the said T. E. Webber for that purpose: Now, therefore, it is agreed and understood, by and between the said T. E. Webber and the said N. L. Davis, that T. E. Webber is to have, as fees for his services as attorney therein, the 10 per cent. per month affixed by the statute as penalty in such default, and that N. L. Davis is to make no settlement with said sheriff, or said bondsmen, or either of them, without the assent of the said T. E. Webber. In the event a proposition of settlement or compromise is submitted, either by the said sheriff and his bondsmen, or by the said T. E. Webber and N. L. Davis, or either of them, the same is not to be accepted unless agreed to by both T. E. Webber and N. L. Davis, and in such proposition, so mutually agreed to, such allowance shall be made for T. E. Webber's attorney's fees as may be agreed

upon by said Webber and said N. L. Davis, or else said proposition shall be rejected. Witness our hands this 30th day of April, 1894, to this agreement, which is separate and distinct from and in no wise affects or impairs any agreement heretofore entered into as to attorney's fees on the interpleas filed for N. L. Davis in said cause.

[Signed]      "N. L. DAVIS.

"T. E. WEBBER."

The amount which the sheriff was ordered to pay Davis was $7,114.50. The sheriff failing to pay said amount upon the demand of Davis, Webber was employed, as indicated *supra*, to proceed against the sheriff and his bondsmen to collect the money. Accordingly, Webber, as attorney for Davis, instituted proceedings against the sheriff and his sureties by motion for summary judgment, and on September 14, 1894, obtained judgment against them for $7,034.50, the amount sued for, less the taxes which the sheriff had paid. The judgment was also for interest at the rate of 6 per cent. per annum, and 10 per cent. per month penalty, on the above amount from April 23, 1894, until paid. It was provided in the judgment that the amount of principal, interest and penalty should not exceed $10,000, the amount of the sheriff's bond. The principal, interest and penalty would have exceeded $10,000 at the time the judgment was rendered. So the judgment obtained by Davis against the sheriff and his bondsmen was for $10,000, and the amount due Webber of said judgment under the contract with Davis was something over $2,800. Webber filed his lien upon said judgment March 21, 1895. In April thereafter Davis accepted of the sheriff and his sureties certain notes and real estate in satisfaction of the judgment against them. This was done without the payment of Webber's fee, and, as he claims, without his consent; hence this suit.

Several defenses were presented. The only ones we need consider are: First, that the contract was void; second, that there can be no recovery except upon a *quantum meruit*, and, in that case, Davis contends, the decree for $1,997.05, was excessive.

1.   *Was the contract void?*   Long ago (1857) this court, in

an elaborate and learned opinion by Mr. Justice Scott, traced the origin, and reviewed the history, of the law of maintenance and champerty, as enacted into statutes and declared by the courts of England. *Lytle* v. *State*, 17 Ark. 608, 663, *et seq.* The conclusion reached was that such laws were not applicable to contracts between attorney and client providing remuneration to the attorney for services rendered his client in conducting litigation. The English rule avoiding such contracts upon the ground of maintenance and champerty was repudiated, as repugnant to our constitution and statutes, and the court showed, and might have added, that such a rule was contrary to the genius of our institutions. As was said by Mr. Justice Cobb in *Newman* v. *Washington, Mart. & Yerg.* (Tenn.) 79: "It is consonant with the nature of our institutions that faithful labors should be rewarded by reasonable remuneration, and he who works at the bar, and he who works at the plane, the physician, the farrier, the carpenter, and the smith, should all possess an equality of rights, and be paid what they reasonably deserve to have, according to the nature and value of their respective services." And he continues: "Here we have no separate orders in society, none of those exclusive privileges which distinguish the lawyer in England, in order to attach him to the existing government, and which constitutes him a sort of noble in the land. * * * But, upon the whole, a lawyer in England is as different from a lawyer here as a man clad in a plain suit of black or blue—his head such as nature made it—is unlike him in appearance who has his body surrounded with a long robe and his head covered with a large wig." As was said by Chief Justice Gibson in *Foster* v. *Jack*, 4 Watts, 334 "The dignity of the robe, instead of any principle of policy furnishes all the arguments that can be brought to support" the English rule. *Kennedy* v. *Brown*, 7 L. T. Rep. (N. S.) 626, 9 Jur. (N. S.) 119.

More than once since the decision in *Lytle* v. *State, supra*, this court has recognized the validity of contracts between attorney and client, allowing the former a contingent interest in the subject-matter of litigation as compensation for his professional services. *Brodie* v. *Watkins*, 33 Ark. 545; *Jacks* v. *Wheat*, 39 Ark. 340; *Cockrill* v. *Sanders*, 8 S. W. Rep. 831.

We are aware that some American courts of eminent respectability have approved the English rule concerning such contracts. *Miles* v. *Collins*, 1 Metc. (Ky.) 308; *Dumas* v. *Smith*. 17 Ala. 305; *Price* v. *Carney*, 75 Ala. 552. But see *Coquillard* v. *Bearss*, 21 Ind. 479; *Orr* v. *Tanner*, 12 R. I. 94. See *Gilman* v. *Jones*, 87 Ala. 702, for the doctrine now in Alabama.

But the modern, and decidedly prevailing, view in this country is in accord with the rule adopted by this court, to uphold such contracts. See cases collected in 5 Am. & Eng. Enc. Law (2 Ed.), 826, and in note to *Kennedy* v. *Broun*, 2 Am. Law. Reg. (1862–3) p. 372.

Such contracts, however, should be characterized by the utmost good faith on the part of an attorney towards his client, because of the confidence reposed in him. The courts will scrutinize such contracts closely, to see that *uberrima fides* has been preserved. If there has been "suppression or reserve of fact or exaggeration of apprehended difficulties," or any circumstances of the confidential relationship have been seized upon by the attorney to consummate an oppressive contract with the client, the courts will not hesitate to express their disapprobation of such contracts, and, when called upon, will set them aside or refuse their enforcement. *Ex parte Plitt*, 3 Wall. Jr. (C. C.) 480; *Chester County* v. *Barber*, 97 Pa. St. 455; *Stewart* v. *Houston, etc. R. Co.*, 62 Tex. 248; 5 Am. & Eng. Enc. Law, (2 Ed.) 827. This court, in *Jacks* v. *Thweatt*, 39 Ark. 340, passed upon a contract containing a stipulation whereby the clients agreed "to make no settlement without consulting their attorneys." But the question as to whether that clause rendered the contract void was not raised or decided in that case.

So far as the amount of the fee as fixed by the contract is concerned, there is nothing in the record to show any unjust or unfair advantage taken by Webber of his client, Davis, in determining the amount. At the time the contract was executed (30th of April, 1894), only seven days had expired from the time (23d of April, 1894) demand was made upon the sheriff for the money which he had been ordered to pay over to Davis. Under the contract Webber was to get no fee unless there was a recovery. While the amount Davis was to receive upon recovery was fixed and certain, the amount Webber was to receive

was contingent, depending entirely upon the time that elapsed from the demand until the amount sued for was collected. At the time Webber entered into the contract, neither he nor Davis could know what time would intervene before a settlement might be reached. If the sheriff and his bondsmen had settled the amount, with Webber's consent, in a few days after the contract between Davis and Webber was executed, the amount of Webber's fee would have been very small as compared with the amount of same at the time of the judgment. Davis appears to have been well pleased with the agreement. He says: "I told him (Webber) that if he would agree to collect the $7,114.50 for me, he could have any penalty that might be allowed; and if he would agree to that, and agree to set aside all the money that was collected until the whole amount of the principal was collected for me, that he could have the amount that would be allowed as a penalty." Witness Smith, one of the sheriff's sureties, and who was acting as an intermediary between the sheriff and his other bondsmen and Davis, to bring about a settlement before suit was instituted, and who had made a proposition of settlement to Davis, which Davis had declined, said concerning this: "I told him I was sorry, and that he would regret it more than I ever would; that in twenty-two or twenty-five years from now, when he hadn't got a nickle out of it, and a big lawyer's fee on his shoulders, he would think that Smith was right once." He [Davis] said: 'As to my lawyer's fee, Mr. Smith, I have a contract right here in my safe with a good attorney that I am never out a cent attorney's fee, but I must have all of my money, before there is any liability for attorney's fee.' I said to him, 'Mr. Davis, you certainly have an elegant contract.' He says, 'I think I have.' " Davis was a merchant, a man of intelligence, and, as the record shows, of considerable experience in litigation, and in the matter of contracts for lawyers' fees.

A contract with his attorney for fees, which, as the witness reports him, Davis regarded as "elegant" in the beginning of his important litigation, can not be avoided for the reason simply that, in the end, it did not bring to him the results which he had anticipated under it. Yet this is about the sum total of his grievance, so far as we can see. Therefore we do not consider

what is said by the learned counsel for Davis, in their excellent brief, as to good faith, fraud, oppression, extortion, the "severe relationship of trustee and *cestui que trust*," etc., and the authorities cited on these subjects, as applicable under the facts of this case. The facts, as we view them, fail to show any abuse whatever of the confidential relation of attorney and client, and, were this all, we would uphold the contract.

But it is contended that the provision in the contract preventing Davis from settling the controversy without the consent of Webber is void. This contention is well taken. Such a stipulation is against public policy. "The law," says Judge Dillon in *Ellwood* v. *Wilson*, 21 Ia. 523, "encourages the amicable adjustment of disputes, and a construction of a contract which would operate to prevent the client from settling will not be favored." It is said in *Lewis* v. *Lewis*, 15 Ohio, 715, that "a contract with an attorney to prosecute a suit containing a stipulation that the party should not have the privilege to settle or discontinue it without the assent of the attorney would be so much against good policy that the court would not enforce it." In *North Chicago St. Ry.* v. *Ackley*, 49 N. E. Rep. 222, it is held "that any contract whereby a client is prevented from settling or discontinuing his suit is void, as such agreement would foster and encourage litigation."

The impeachment of the contract under consideration is peculiarly proper upon the ground of public policy, regardless of the fairness and good faith of the parties in executing it. We would not call in question the good faith of the parties to the contract. The record would not justify our doing so. Davis was anxious to procure the services of an attorney to collect the money coming to him without paying out any "ready cash," and, as he says, he did not know whether any penalty would be allowed. Webber was perfectly willing to take the penalty for his fee, and risk the chance of recovering it. This, at the time, was doubtless considered an admirable arrangement by both, and, but for the clause prohibiting Davis making a settlement without the assent of Webber, we can see no objection to it. This clause was fatal to the entire contract. It is not severable from it. It seems to have been an inducement for entering upon the contract. It is impossible for us to say that

the parties would have entered upon the contract at all without this clause.     To approve such a contract as a precedent would be unprecedented.     It is a wise public policy to allow the parties to a law suit, or to disputes that have not even progressed to the proportion and dignity of a law suit, to settle their differences without hindrance from disinterested parties.     Parties should be permitted to beg or buy their peace at any time. It would be difficult to estimate the monstrously unjust consequences that might result to parties willing and ready to settle a demand of this kind, if it lay in the power of an attorney to impede or control such settlement, especially when his interest in doing so was quickened by the stimulating influence of a fee which was accumulating at the appalling rate of $700 per month.     It could hardly be expected that such a condition would expedite the litigation or the settlement.

When a law suit has progressed to judgment, then, of course, the attorney, under the statute (Sand. & H. Dig. § 4223) may establish his interest in the judgment which has resulted from his services, and this neither party to the litigation can ignore.     Then the parties may settle if they wish, but before there can be any satisfaction of the judgment the attorney's fee must be paid.     Before judgment the attorney can only trust to the integrity and good sense of his client not to compromise without advising with him and making satisfactory arrangements as to the fee.     If the attorney should have for his client one who has neither the good sense to consult him nor the integrity to pay him, then, indeed, would he be unfortunate.     But where this is the case, generally the attorney, unless he expects to give his services as *quiddam honorarium*, well deserves censure rather than sympathy for having such a client, and will have to suffer the consequences.

2.     While the contract sued on is against public policy, and therefore void, yet the making of such a contract is neither *malum prohibitum* nor *malum in se*.     It is not even of questionable propriety.     Therefore the courts, although refusing to enforce such a contract, will nevertheless grant compensation for valuable services rendered under it, upon the rule of *quantum meruit*.     5 Am. & Eng. Enc. Law (2 Ed.) 828, and authorities cited.

The question as to the amount of recovery is one of fact, and one most difficult to decide, in view of the varying opinions of gentlemen distinguished in the profession as to the value of such services, and also the conflicting opinions of witnesses as to the value of the property accepted by Davis in satisfaction of the judgment, all of which it is proper to consider in fixing the value of the service under a *quantum meruit*.

The court may look to the contract for the purpose of ascertaining what the parties themselves thought the services were reasonably worth, and, in connection with the other evidence, to determine what was the reasonable value of the service actually rendered. *Shumate* v. *Farlow*, 125 Ind. 359, 361; *La Du King Mfg. Co.* v. *La Du*, 36 Minn. 473; *Clark* v. *Gilbert*, 26 N. Y. 279. But it can not be taken as the criterion of value for such services. *Holloway* v. *Lowe*, 7 Port. (Ala.) 488; *Elliott* v. *McClelland*, 17 Ala. 209.

The professional standing of the attorney, the amount of his professional business, and the nature and importance of the controversy in which the services were rendered, are all to be considered. 1 Lawson, Rights, Rem. & Prac. § 198.

Webber was "no cheap man" and "no mean lawyer." On the contrary, the character of the litigation, which the record discloses he conducted to a successful termination, and the fees he demanded and received, show him to have been a lawyer of good ability, who doubtless deserved, demanded and received pay commensurate with his labors and his talents. Now, this being true, what was the reasonable value of the services he rendered Davis in his controversy with the sheriff and his bondsmen? It would serve no useful purpose to set out in detail, and to discuss at length, the evidence (which is voluminous) upon which we base our conclusion. A less intelligent lawyer than Webber must have known, when he entered upon the contract, that there would be but little work and no difficulty in reducing the demand of Davis to judgment. All but a trifle of the amount had been judicially ascertained, and, from the lawyer's standpoint, it could have been but a simple and easy matter to file the motion and have summary judgment entered; for, in the state of Davis' claim, however hotly contested, there could be absolutely no defense

to it.   There could be no uncertainty as to the amount, nor as to the result of the judgment, as far as the principal of the claim was concerned.   The only uncertainty and contingency whatever related to the penalty, and there was no contingency about obtaining judgment for this, but only uncertainty as to the amount that would be allowed, depending upon the time that would intervene between the demand and the judgment. It will not do to liken a case of this kind to a suit for damages for personal injury, or any other kind of a suit, where both the question of obtaining judgment and the amount thereof, if obtained, are trembling in the balance.   This, in fact, is a suit upon a liquidated demand, where there was no issue as to the amount of the judgment, and no doubt about obtaining it. The proof shows that the lawyer's fee, based upon the contingency of final recovery, would be much less in the latter case than in the former.   Necessarily so, because of the diminished labor in its prosecution, and the anxiety as to the result.

The paramount obstacle that lay in Webber's path was not the difficulty and labor of obtaining judgment, but in collecting it.   But even this, in view of actual results, was reduced to the minimum; for while suits to recover at one time were thought to be necessary, and investigations made and memoranda taken for the preparation of bills to that end, as a matter of fact, such bills were never filed, and there was no long and complicated litigation to collect what was finally received. Now, Webber, under the *quantum meruit*, should receive pay only for the services actually rendered.   Suits that were never prosecuted should not be considered.   We would not minimize the value of his excellent labors.   His known ability, persistence and vigilance doubtless moved the sureties of the sheriff to make the offer of compromise, both before and after the suit was instituted.   We are willing to concede this.   Then how does the case stand?   Webber instituted a suit against the sheriff and his bondsmen for the sum of $7,114.50, and which he must have known at the time, unless settled by them before, would amount to ten thousand dollars, including interest and penalty, by the time judgment would be obtained.   To this claim, which had been ascertained by the court, and the amount of penalty fixed by the statute, even though

vigorously contested, there could be no defense. He succeeded in obtaining judgment for ten thousand dollars, and recovered of the amount, according to the estimate of the property by the court below, the sum of $8,850. A majority of the judges are of the opinion that this is the most favorable view of the case that can be taken for Webber; and it is, in our opinion, the correct view. When so considered, under all the proof, the sum of $1,000 would be a reasonable and fair compensation for all his services. This would give him ten per cent. of the amount of the judgment, or ten per cent. of the amount collected, and one hundred and fifteen dollars for the work done in preparing for suits to uncover, which would be ample to pay for that.

3. The court rendered judgment for $152 for services in a different suit. This is a suit to declare and enforce a lien for a fee for services rendered in a certain suit, on property which was received as a result of that suit. The controversy over the $152, being about an entirely different matter, is in no way germane to this issue, and should not have been considered, and judgment for said sum was improper in this proceeding.

The decree is therefore reversed, and the cause remanded, with instructions to enter a decree for Webber in the sum of $1,000, with interest at six per cent. per annum from the date of the acquisition of the property by Davis, and to proceed to enforce the lien on the property mentioned in the complaint, and for such other proceedings as may be necessary, not inconsistent with this opinion. The costs of this court will be paid by appellee; the cost below will stand as adjudged by the chancellor.

BUNN, C. J., dissenting.