JOHNSON *v.* MISSOURI PACIFIC RAILROAD COMPANY.

Opinion delivered June 2, 1919.

1.  EVIDENCE—WRITTEN INSTRUMENT—PAROL TESTIMONY TO EXPLAIN LATENT AMBIGUITY.—When a written instrument, applied to its subject-matter, shows a latent ambiguity, parol testimony of the facts and circumstances surrounding its execution may be given to clear away its uncertainty.

2.  SAME—SAME—SAME.—The rule just stated does not contemplate that a written contract can be added to or subtracted from by evidence of surrounding circumstances; but the rule is invoked and employed only in cases, where, upon the face of the contract itself, there is doubt and the evidence is used to dispel that doubt, not by showing that the parties meant something other than what they said, but by showing what they meant by what they said.

3.  ATTORNEY AND CLIENT—CONTRACT FOR FEES—AMBIGUITY.—A contract between an attorney and his client contained this provision: "My part to be not less than $10,000 and I have privilege of ac-

cepting the railroad company offer of compromise up to $25,000, if they make an offer after giving them four or five days' notice and no fee goes to you." *Held*, it is uncertain whether the words, "my part to be not less than $10,000," refer exclusively to the compromise to be attempted and effected before suit was to be instituted, or whether the parties meant that no fee was to be received by the attorney unless a recovery in excess of $10,000 was had against the railroad company.

4.   SAME—PAROL TESTIMONY TO EXPLAIN.—The contract between attorney and client as set out in 3 *supra, held* ambiguous, and *held* also that the trial court erred in holding it unambiguous, and in not admitting parol testimony of conversations and negotiations between the parties at the time of the execution of the writing, which would serve to construe the latent ambiguity in the contract.

5.   ATTORNEY AND CLIENT—AGREEMENT NOT TO MAKE SETTLEMENT.— A contract between an attorney and client, *held* not to contain a provision preventing the client himself from settling the litigation.

6.   ATTORNEY AND CLIENT—CONTRACT FOR FEE—ADVANCE OF COSTS BY ATTORNEY—ONE-HALF PROCEEDS.—A contract between an attorney and client provided that the attorney advance the costs of the suit, and, in the event of recovery, such costs to be deducted from the amount recovered, and the attorney to get one-half of the remainder as his fee, and, in the event of failure to recover anything in the action, the attorney agreed to lose the money he had advanced for expenses of litigation and to charge no fee. *Held*, under the act of 1909, page 892, and upon the adjudicated authorities, that the contract is valid and binding, there being no evidence in the contract itself and no extrinsic facts on the record showing a lack of good faith or tending to impeach the contract.

Appeal from Baxter Circuit Court; *J. B. Baker*, Judge; reversed.

STATEMENT OF FACTS.

This is an appeal from a judgment of the circuit court dismissing an attorney's claim for compensation in an action for damages for injuries resulting in death to a locomotive engineer alleged to have been caused by the negligence of the railroad company, in whose service he was at the time engaged.

The material facts are as follows: On February 13, 1918, John H. Fulson, while running a passenger train of the Missouri Pacific Railroad Company in the State of

Arkansas, was killed by his train striking a boulder on the left hand side of the track and thereby violently throwing the engine from the track. There was a sharp curve on the left hand side of the track as it entered a deep, narrow cut, and the railroad company had negligently allowed a large boulder to fall down on the left hand side of the track, lodging there and breaking a rail. Fulson, being on the right hand side of the engine at his post as engineer, was unable to see the boulder as the engine rounded the curve and entered the cut. Fulson was 44 years old at the time of the accident and an intelligent, strong and healthy man. His wife and several minor children survived him. The administrator of his estate, for the purpose of prosecuting a suit for damages against the railroad company entered into a contract with an attorney at law as follows:

"1. Whereas, the undersigned has a cause of action against the Missouri Pacific Railroad Company for personal injuries resulting in death to John H. Fulson and needs legal advice and other assistance, and wishes to employ Jo Johnson, lawyer, of Fort Smith, Arkansas (phone 110), and is dependent on said cause of action as an asset and security upon which, if possible, to employ counsel and secure expense moneys, and,

"2. Whereas, the said Jo Johnson has consented to accept such employment, and to arrange for all moneys as may become necessary for such expenses, on the terms as proposed by the undersigned, and only on condition that all of said terms and conditions shall be faithfully and fully carried out and performed.

"3. Now, therefore, I, the undersigned, of the address stated with my signature, have made, constituted and appointed, and by these presents do make, constitute and appoint, the said Jo Johnson my true and lawful attorney and agent, both in law and in fact, for me and in my name, place and stead,

"4. To conduct and manage to full and final settlement, and to fully settle, by suit or otherwise, my said cause of action, and he to employ any assistant counsel

or expert witnesses, or other help of any character, by him deemed probably beneficial to the interests of my cause of action; my said attorney to advance moneys to pay expenses in all courts, change of venue, appellate or otherwise, and all things to be done according to his best judgment and discretion.

"5.  My said attorney has agreed to lose all of his said expense moneys and charge me no fee in event of failure, and in event of success we have agreed that he shall first deduct from the proceeds all expenses or charges outside of his fee, and then shall retain half the remainder as his fee for his services, and shall deliver the remaining half to me; provided, if he shall have loaned me any separate money for my personal use, he shall deduct that from my share and shall have ten per cent. per annum interest on his cash advancements.

"6.  In consideration of the chances my said attorney has agreed to take, and the burdens he has agreed to carry, as stated, I have specially agreed not to in any way interrupt his management of my cause of action.

"7.  My part to be not less than $10,000 and I have privilege of accepting the railroad company offer of compromise up to $25,000, if they make me an offer after giving them four or five days' notice and no fee goes to you.

"8.  I have read this contract and fully understand it.

"Witness my hand this 4th April, 1918.

"G. W. Wall, Administrator."

"Accepted:  Jo Johnson."

The contract was written on a printed form and one clause was marked out, which will be more particularly referred to in the opinion. The original contract is in the record and the paragraphs are not numbered. We have numbered them for the sake of brevity and convenience in writing the opinion.

The attorney filed a suit for damages for the administrator in the Baxter Circuit Court against the railroad company on June 6, 1918. Subsequently the administrator was removed and an administrator in succession ap-

pointed. During the latter part of August, 1918, he discharged Johnson and dismissed the suit against the railroad company. In September, 1918, for the purpose of carrying into effect a compromise with the railroad company, he instituted a friendly suit against it in the Pulaski Circuit Court for $10,000, and by consent obtained judgment for that sum. Johnson claimed that he was entitled, under his contract, to a fee of one-half the amount recovered; but his claim was denied by the railroad company. Johnson then filed his petition in the Baxter Circuit Court under an act providing that the compensation of an attorney shall be governed by agreement and also, the manner in which the court may determine and enforce a lien for the attorney's services created by the act. Acts of 1909, p. 892. The matter was submitted to the court under the provisions of the act. Johnson claimed that the language of the contract rendered it ambiguous. He claimed that under its terms he was to get half of the amount recovered after deducting the costs of the litigation. That the whole of paragraph seven related to a compromise on the part of the administrator before a suit against the railroad company was to be filed. That the words, "My part to be not less than ten thousand dollars," in the first part of paragraph seven, referred solely to the right of the administrator to compromise within four or five days after notice given to the railroad company before suit should be brought, and that it had no reference to the amount to be recovered after the management of the suit was turned over to him. The court first permitted Johnson to testify, reserving its decision as to its admissibility. The testimony of Johnson is long and involved; but we think it is legitimately susceptible to the construction placed upon it in his brief. The court below seemed, also, to have been of that opinion and after due consideration refused to receive the testimony on the ground that the contract was not ambiguous and that under its terms, Johnson was not allowed to recover anything as compensation unless the administrator by suit or compromise recovered more than that amount against the railroad company.

The trial court adjudged that Johnson's petition for attorney's fees under the statute should be denied, and Johnson has appealed.

*Jo Johnson,* for appellants.

1. Under the contract appellants were entitled to recover as a fee one-half of the amount recovered by the administrator after deducting the costs and expenses. 120 Ark. 289. The contract is to be construed most strongly against the party drafting it. 73 *Id.* 338; 74 *Id.* 41; 135 S. W. 343; 84 Ark. 431.

As a general rule third parties are not bound by the contract. 208 S. W. 786, but in 237 U. S. 285, 35 Sup. Ct. Rep. 543, it is held that the contract between the attorney and client is to be resorted to as a basis for calculating the compensation of the attorney irrespective of the rights of third parties. *Ib. loc. cit,* p. 549, 2nd col. See also 35 Sup. Ct. Rep., p. 549.

2. The interveners were clearly entitled to $5,000 under the contract. 128 Ark. 471; 237 U. S. 285; 55 Miss. 626.

3. Under section 1, Act 293, Acts 1909, appellants are entitled to recover. Kirby & Castle's Digest, p. 1916, § 463. They had a lien on the judgment and it cannot be affected by any compromise or settlement of the parties. 47 N. Y. Sup. Ct. (17 Jones) 89; 54 N. Y. Sup. Ct. (22 Jones) 8. See also 12 N. Y. Supp. 111; 35 Sup. Ct. Rep. 543 (549).

*Allyn Smith,* for Jo Johnson, makes the same points and cites the same authorities, *supra.* The judgment should be reversed, with instructions to enter judgment for $5,150.50 for attorney's fee and costs and expenses, etc.

*Troy Pace,* for appellee.

1. The contract was invalid, for the reason that G. W. Wall, who executed the contract, was never the legal administrator of Fulson, deceased. He was a non-resident of Arkansas and his letters and contracts were null and void. Kirby & Castle's Digest, § 14.

2. The right to remove to the Federal Court was not waived, nor its right to object to the competency of the administrator by filing notice, petition and bond for removal. 161 U. S. 271, 41 Lawy. ed. 431.

Appellee is not estopped to raise this question being a jurisdictional one. *Ib.*

3. The contract was void for champerty and against public policy. 66 Ark. 190; 206 S. W. 38.

4. The contract provided for no fee unless recovery in excess of $10,000 was had. An attorney is bound by his contract with his client. 120 Ark. 394. See also 120 *Id.* 289; 128 *Id.* 471; 205 S. W. 118.

HART, J., (after stating the facts). It appears from the record that the administrator of the estate of John Fulson, deceased, brought suit against the railroad company for negligently causing the death of said John H. Fulson, while in its employ as a locomotive engineer. Jo Johnson was his attorney under a contract executed by himself and the administrator. The administrator in succession discharged Johnson and dismissed the action brought by him. The administrator then instituted a friendly suit against the railroad company for the purpose of effecting a compromise with it and, pursuant to their agreement, a judgment was rendered against the railroad company for $10,000. Johnson claims that, the suit having been settled without his consent, he is, under our statute, entitled to recover his compensation as an attorney from the railroad company as declared in *St. L., I. M. & S. R. Co.* v. *Hays & Ward,* 128 Ark. 471.

The contract under which he seeks to recover is set out in our statement of facts and need not be repeated here.

(1) The circuit court was of the opinion that the contract sued on was not ambiguous and should be construed by the court. It was held that the contract on its face showed that the administrator was entitled to recover $10,000 before the attorney was entitled to recover anything; and that, the administrator, having compro-

mised with the railroad company for $10,000 by recovering an agreed judgment rendered against it for that amount, as he had a right to do, Johnson was not entitled to recover anything against the railroad company. This holding was in the application of the well known rule that parol testimony is not admissible to contradict, vary, add to, or take from the terms of a written contract. This brings us to a consideration of the question of whether or not the language of the contract rendered it ambiguous or uncertain in its terms; for it is well settled that when the written instrument when applied to its subject-matter shows a latent ambiguity parol testimony of the facts and circumstances surrounding its execution may be given to clear away its uncertainty.

(2)   This doctrine has been repeatedly announced by this court and several of our earlier decisions on the subject are cited in the late case of *Brown & Hackney, Incorporated* v. *Daubs,* 139 Ark. 53. Indeed the rule is well settled in the text books and in the adjudicated cases elsewhere. The only difficulty is in its application to the facts of a given case. It is not contemplated by this rule that a written contract can be added to or subtracted from by evidence of surrounding circumstances. But as said in *United Iron Works* v. *Outer Harbor Dock & Wharf Company,* 168 Cal. 81, this rule of evidence is invoked and employed only in cases where upon the face of the contract itself there is doubt and the evidence is used to dispel that doubt, not by showing that the parties meant something other than what they said, but by showing what they mean by what they said.

(3)   In the application of this rule to the case at bar, the majority of the court is of the opinion that when the contract, which is the basis of this lawsuit, is read and considered from its four corners, it is uncertain whether the words, "My part to be not less than $10,000" in the first part of paragraph seven refer exclusively to the compromise to be attempted and effected before suit was to be instituted as contended by counsel for Johnson, or whether they mean that no fee was to be received

by Johnson unless a recovery in excess of $10,000 was had against the railroad company. It will be observed that under paragraph five of the contract, it is provided that the attorney is to have as his compensation one-half of the amount recovered, in the event of a recovery. When the provisions of this and other paragraphs are read in the light of each other and paragraph seven, it is uncertain whether the words "My part to be not less than $10,000" in the beginning of paragraph seven refer to the compromise provided for in that paragraph, or mean that in no event, regardless of whether a compromise was effected, should the attorney be allowed any compensation unless the amount recovered be more than $10,-000. It is conceded by counsel for both parties that the latter part of paragraph seven was inserted in the contract for the purpose of giving the administrator four or five days within which he might effect a compromise with the railroad company before suit was instituted under the contract. The words, "My part to be not less than $10,-000," are in the beginning of this paragraph and they may or may not refer exclusively to the compromise provided for in this section.

(4) It appears from the records that these words are in the handwriting of the attorney and that the succeeding words of the paragraph are in the handwriting of the administrator, while the remainder of the contract is on a printed form. Hence it is insisted that in case of conflict, the written part of the contract should control that part which is in print. This does not solve the doubt. The uncertainty is whether the words in question refer exclusively to the compromise provided for in the paragraph in which they are written, or are to be considered a limitation of the right of the attorney to compensation under paragraph five. Therefore, a majority of the court is of the opinion that the trial court erred in holding that the contract was not ambiguous or uncertain, and in not admitting parol testimony of conversations and negotiations had between the parties at the time of the execution of the writing which served to con-

strue the latent ambiguity in the contract in the respects pointed out above.

In *Davis* v. *Webber,* 66 Ark. 190, the court held that a stipulation in a contract for an attorney's fee for prosecuting a suit that the client shall not settle the suit without the attorney's consent is void as against public policy; and that if such stipulation is not severable from the rest of the contract, but is an inducement for entering into it, the entire contract is void. Counsel for the railroad company invoke this rule to defeat the attorney in his right to recover in this case. We do not think that rule has any application to the contract sued on.

(5)     The particular parts of the contract relied upon to support counsel's contention are paragraphs four and six. In the former, the attorney is given the power to conduct, manage and settle the case by suit or otherwise, with the right to employ assistant counsel and expert witnesses. In the latter paragraph, it is reiterated that the client is not in any way to interrupt the attorney's management of the case. The clauses in question are not fairly susceptible to the construction that they prohibit the administrator from making a settlement without the consent of Johnson. Indeed, it appears from the whole contract that such was not the case. The contract is in the record. It shows on its face that there was a printed clause which had for its object the prohibition of the administrator from making a settlement without the attorney's consent, and this clause was marked by the parties before the contract was signed.

(6)     It is next insisted that the contract is champertous and void because it contains a provision binding the attorney to pay the costs of the litigation. On this point it may be said that under the terms of the contract the attorney was bound to advance the costs of the suit, and in the event of recovery, such costs were to be deducted from the amount recovered, and the attorney was to get one-half of the remainder as his fee; and in the event of a failure to recover in this action, the attorney agreed to lose the money he had advanced for expenses of litigation and to charge no fee.

Authorities which adhere rigidly to the common law with respect to the doctrine of champerty and maintenance are cited by counsel in support of their contention. We do not deem it necessary to cite or review these cases; for this court has held that the common law in regard to the offense of champerty has never prevailed in this State. In the early case of *Lytle* v. *State,* 17 Ark. 608, in a syllabus prepared by Judge Scott, who also delivered the opinion, it is said that an attorney at law may purchase his client's interest in the subject-matter of the suit, in consideration of services rendered and to be rendered in the prosecution of the suit, and become bound for the costs in the prosecution of his own and client's rights, without the violation of any law of champerty in this State. In the opinion, the learned Justice referred to the fact that under the English law there was a total incapacity in counsel to make any contract whatever with his client for his professional services, while in this State the right of making contracts is a high personal privilege of the citizen, which could be claimed by lawyers as well as by any other classes of citizens.

In the later case of *Davis* v. *Webber,* 66 Ark. 190, the court again held that a contract between an attorney and client, allowing the former a contingent interest in the subject-matter of litigation as compensation for his professional services, is not void for champerty, though the courts will scrutinize such a contract closely to see that the attorney has taken no unjust or unfair advantage of his client. In *Davis* v. *Webber, supra,* the court referred to the fact that in *Lytle* v. *State, supra,* the court had traced the origin and reviewed the history, of the law of maintenance and champerty as enacted into statutes and declared by the courts of England. Continuing, the court said: "The conclusion reached was that such laws were not applicable to contracts between attorney and client providing remuneration to the attorney for services rendered his client in conducting litigation. The English rule avoiding such contracts upon the ground of maintenance and champerty was repudiated, as repug-

nant to our Constitution and statutes, and the court showed and might have added, that such a rule was contrary to the genius of our institutions."

In discussing the question in 11 C. J., pp. 242 and 243, it is said that in the States in which the common law doctrine of champerty and maintenance has not been adopted, it is nothing contrary to law, morals or public policy in a contract by an attorney to recover land or other property for an interest in it, even though he also agrees to pay the costs and expenses; and *Lytle* v. *State,* 17 Ark. 608, is the first case cited in support of the text.

There was an early statute passed in the State of Michigan directed against champerty and maintenance. The statute was in reality but an affirmance of the common law. Subsequently a statute was passed providing that the compensation of attorneys might be fixed by agreement between them and their clients and further providing that all laws in conflict with it should be repealed. It was held that this statute repealed the earlier one prohibiting champerty and maintenance, and that under it, a contract between an attorney and his client that the attorney should pay all costs incurred on account of bringing an action, in case he failed to recover anything, was valid. *Wildey* v. *Crane,* 63 Mich. 720, 30 N. W. 327, and *Lehman* v. *Detroit etc. R. Co.* (Mich.), 147 N. W. 628.

In *Brown* v. *Bigne* (Ore.), 27 Pac. 11, 28 A. S. R. 752, 14 L. R. A. 745, it was held 'that the doctrine of champerty is directed against speculation in lawsuits and to repress the gambling propensity by buying up doubtful claims; that it is not and never was intended to prevent persons from charging the subject-matter of the suit in order to obtain the means of prosecuting it. It has been said that such statutes have been passed so that the doors of justice shall not be shut to the poor, who may be oppressed, or to those who have no other means of prosecuting their suits except the subject-matter of them.

Our Legislature has passed an act providing that the compensation of an attorney is governed by agreement and also providing for an attorney's lien and its enforcement. Acts 1909, p. 892. Under this statute and applying the principles of law above announced, a majority of the court is of the opinion that contracts like the one under consideration are valid and binding obligations where they are entered into in good faith. In the case at bar, there is nothing in the contract itself and no extrinsic facts in the record tending to impeach the integrity of the contract.

From the views expressed, it follows that the court erred in not receiving parol evidence as to the meaning of the contract as indicated in the opinion; and in not submitting this question to the jury.

If the jury should find that Johnson is entitled to recover, he will be only entitled to recover one-half of the amount recovered by the administrator, after deducting the expenses and costs as provided in paragraph five of the contract. See *St. L., I. M. & S. R. Co.* v. *Kirtley & Gulley,* 120 Ark. 389.

For the error indicated, the judgment must be reversed and the cause will be remanded for a new trial.

McCULLOCH, C. J., (dissenting). I fail to discover any ambiguity in the words, "my part to be not less than ten thousand dollars," or in the relation of that language to the other parts of the contract. If it means anything at all, it constitutes a modification of the terms specified in the printed portion of the contract and means that in the event of recovery the plaintiff's part of that recovery is to be as much as $10,000, and that the fee, if any, must come out of a recovery in excess of that amount. The words cannot, it seems clear to me, have any reference at all to the compromise clause, as that part of the contract which relates to the compromise, is complete without the words quoted above, for it is distinctly provided therein that the plaintiff should have the privilege of making a compromise settlement up to $25,000, and

that in that event the attorney should receive no fee. The contract having unequivocally given the plaintiff the right to compromise up to $25,000 without fee to the attorney, it was entirely superfluous to add the words specifying that the plaintiff was to receive $10,000 for his part, if they were intended to apply to the compromise before suit. The fact that there is ambiguity in that part of the paragraph which refers to the "four or five days notice" does not afford grounds for the admission of testimony with respect to the unambiguous portion of the sentence. *Brown & Hackney* v. *Daubs,* 139 Ark. 53.

But if it be conceded that there is ambiguity sufficient to let in proof of the intention of the parties, Mr. Johnson himself testified that the words "my part to be not less than ten thousand dollars" had no reference to the compromise, but that it applied to the contract after the effort to compromise had been exhausted, and his own testimony defeats his right to recover a fee in the case. Here is his testimony, literally, on that subject:

"Q. That had no reference to his settlement of the case, the part Mr. Wall wrote in the contract, and if he could get a settlement up to $25,000, he was to have it all and you was to get nothing?

"A. Yes, if he found he was in error in his then conviction that he could not get them above $5,000, but, if he could get them above that figure, even up to $25,000, and an offer that the family would accept, and he settled it and turned me loose, I was not to get any fee at all.

"Q. If he made settlement for any sum up to $25,-000, he was to get the money, and if he failed and you took it up, he was to have $10,000 before you got any fee?

"A. That special $10,000 provision was not a provision or a part of the contract at all, except on the condition that when he exhausted his efforts of settlement then he would not disturb my management of the case."

Now, if the contract means what it seems to me that it means, and what Mr. Johnson himself says it was intended to mean, *i. e.,* that the attorney was not to get a fee in any event except out of a recovery in excess of

$10,000, then it follows that there can be no recovery in this case, for the reason that the plaintiff had the right, independently of any contract to control his own litigation and to compromise for any sum he saw fit to accept (*St. Louis, Iron Mountain & Southern Railway Company* v. *Blaylock,* 117 Ark. 504), and as the attorney agreed in the contract that he should not receive a fee except in the event of a recovery of more than $10,000, he is bound by that contract and cannot assert a lien against the railway company which is in conflict with the terms of his own contract with his client.

If the language quoted above be construed to have reference to a compromise and to operate as a limitation as to the amount for which the client could settle his own case, then that interpretation of the contract defeats its validity under the law announced by this court in the case of *Davis* v. *Webber,* 66 Ark. 190.

HART, J., (on rehearing). The majority opinion is based on a holding by the circuit court that the contract was not ambiguous and that it showed on its face that the administrator was entitled to recover $10,000 before the attorney could recover anything.

This court held, that upon the face of the contract itself, there was a doubt as to its meaning in the manner pointed out in the opinion that parol evidence might be used to dispel that doubt. In other words, the court held that it was uncertain whether the words, "My part to be not less than $10,000," in the first part of paragraph seven refers exclusively to the compromise to be attempted and effected by the administrator in three or four days before the suit was to be brought, or whether they mean that no fee was to be received by the attorney unless a recovery in excess of $10,000 was had against the railroad company, and that, therefore, the trial court erred in holding to the contrary.

It is now contended by counsel for the appellee that the trial court heard oral testimony and that its finding was based thereon. While the trial court did hear

the testimony, it reserved a ruling on its competency and at the conclusion of the hearing based its finding for appellee on the language of the contract itself, holding that it was not ambiguous.

Counsel insist that the statement made by the court and the judgment rendered show the correctness of his present contention. The concluding part of the statement sums up the conclusion of the trial court as follows :

"The only question, as I see it, for me to determine is whether or not the attorneys are entitled to recover on the contract entered into. If I can place any construction on or understand the English language, it means that there must be a recovery of more than $10,000 before the attorneys would be entitled to anything. The condition in there that 'I, the administrator, must receive not less than $10,000,' Mr. Johnson says that means the administrator must receive $10,000. * * * There is no question but what, if they had compromised for any amount of money over and above $10,000, the attorneys would be entitled under the terms of the contract to recover in accordance with the surplus."

The judgment of the court is as follows: "And thereupon, the cause coming to be heard on the petition of the interveners and the response thereto, and the interveners introduced their testimony and rested, the defendants introduced their testimony and rested, and thereupon the court, having heard the argument of counsel and being fully advised in the premises, doth find that the contract for attorney's fee as pleaded and introduced herein is for a fee of fifty per cent. of any amount received or paid in excess of the sum of $10,000, and that, the settlement being for the sum of $10,000 only, that under that contract the petitioners are not entitled to recover thereon."

We think that a careful reading of the statement of the court shows that it based its finding on the contract itself, and that it so states in plain terms. This view is strengthened by the language used in the judgment.

After reciting that testimony was introduced, the language is that the court doth find, ''that the contract for attorney's fee as pleaded and introduced herein is a fee of 50 per cent. of any amount received in excess of $10,000.'' The words, ''contract as pleaded and introduced herein,'' show that the court based its findings upon the language of the contract itself and did not consider the oral testimony introduced.

Counsel for appellee in his motion on rehearing also contends that the judgment should be affirmed because the evidence of Johnson himself shows that he is not entitled to recover. He has set out certain excerpts from Johnson's testimony which are susceptible of that construction; but we do not think his testimony considered as a whole is only susceptible of the construction placed upon it by counsel for appellee.

Mr. Johnson was examined and cross-examined at great length, and, as is frequently the case where lawyers are personally interested, his testimony is a jumble of facts and argument and for that reason and on account of its length it is impractical to set it out in full. The majority of the court think, however, that when all of it is read and considered together it might be legitimately inferred from it that the words in the beginning of paragraph seven quoted above, had no application except in case of a compromise before suit was brought and that, after suit was commenced, paragraph seven became a nullity and paragraph five only was operative in regard to attorney's fees. It is evident that the trial court so understood Johnson's testimony; for, if the presiding judge had understood it only to mean what counsel for appellee now contends it to mean, he would have held that Johnson could not recover under his own testimony considered in its most favorable light to himself.

Moreover, even if his testimony as disclosed by the record is only susceptible of the construction placed upon it by counsel for appellee, it does not follow that the judgment must be affirmed, if we are correct in holding

that the judgment of the court below was based solely upon the language of the contract itself.

In *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Coleman,* 97 Ark. 438, the judgment was reversed because the court was of the opinion that the circuit court erred in holding that the deceased was guilty of contributory negligence as a matter of law and the direction was that the cause should be dismissed. On rehearing the judgment was modified so as to remand the case for a new trial because counsel for plaintiff made a showing that they had reason to believe that they could adduce testimony on a new trial which would carry the case to the jury on the question of contributory negligence.

Johnson, in his original brief, made the same contention he now makes as to the effect of his testimony, and counsel for appellee did not challenge the correctness of his contention in his original brief. Hence this state of the record may be taken as a showing by Johnson in good faith that he can make the proof indicated on a new trial of the case.

It follows that the motion for rehearing will be overruled.