[L. A. No. 20280. In Bank. Nov. 19, 1948.]

MAUD SARAH AMY CALVERT et al., Appellants, v. SAMUEL C. STONER et al., Respondents.

[L. A. No. 20281. In Bank. Nov. 19, 1948.]

SAMUEL C. STONER et al., Respondents, v. MAUD SARAH AMY CALVERT et al., Appellants.

Avery M. Blount and William J. Clark for Appellants.

Everett H. Smith and Marvin Wellins for Respondents.

SHENK, J.—These appeals are by the Calverts from judgments against them and in favor of Stoner in consolidated

actions for equitable relief and for the partition of real property. Samuel C. Stoner (herein also referred to as the defendant) is an attorney at law practicing in Los Angeles. Maud Sarah Amy Calvert (herein also referred to as Maud or as the plaintiff) is the daughter of Frank Eli Keller, deceased. J. Melvin Calvert is her husband. Cora Calvert is her mother-in-law, and Harriet Keller is her step-mother.

In April, 1942, the Calverts were temporarily absent from California when Frank Eli Keller died leaving a will under which Harriet was the chief beneficiary of purported trust provisions involving an estate, including three pieces of real property, jewelry and cash, of the appraised value of $33,425. Stoner telegraphed Maud that her father had passed away. At Maud's request on May 28, 1942, he sent her a copy of her father's will and suggested the probable invalidity of its trust provisions. The will contained a clause revoking the share to a legatee, devisee or beneficiary who should contest the will or any of its provisions.

On June 3, 1942, Cora and Maud by letter requested Stoner to prepare a contract to employ him to act as Maud's attorney for a contingent fee of 25 per cent in the event of compromise or of 33⅓ per cent, if no compromise, over and above $25 per month provided for her in the will, and to prepare a power of attorney appointing Cora as attorney in fact for Maud. These documents were prepared and sent to Maud, who was then in Missouri. The contract of employment as prepared provided for a contingent fee of one-third of the recovery over and above the payment of $25 per month to the date of final distribution or settlement, and for the payment of costs by Maud. It also provided for the transfer to Cora of a 16⅔ per cent interest in the property recovered in consideration of certain advances and services rendered by her to Maud. The contract was signed by Stoner, Maud and Cora.

After mailing the contract to Maud, Stoner filed a request for special notice of all proceedings taken in the matter of the estate of Frank Eli Keller, designating himself as Maud's attorney. In June, 1943, Stoner filed objections to the final account and petition for distribution of the Keller estate. He also filed a petition to construe the will, contending that the testamentary trust provisions were void as violating the rule against perpetuities. The hearing was set for August 4th, which was after the Calverts had returned to California. On August 3d, Stoner sought an assignment from Maud of

one-third of her interest in the Keller Estate, distribution to be made directly to him. The assignment was presented to Maud at her place of employment. She refused to sign except with a provision that Stoner pay one-third the costs of litigation. On the morning of August 4th, the parties executed in Stoner's office the assignment and a supplement to the employment agreement whereby Stoner agreed to pay one-third of all costs and to furnish legal services on appeal, if necessary. Stoner paid Maud the sum of $33.53, representing one-third of the costs thus far advanced by her.

The hearing on the protests and the petition in the probate proceeding consumed eight days, following which the court held that the testamentary trust was invalid, as a consequence of which one-half of the Keller estate became distributable to the widow and the other half to Maud or her assigns. Pursuant to the assignment filed in the probate proceedings, Stoner's one-third of Maud's one-half interest was distributed directly to him. No appeal was taken and the decree of distribution became final. Stoner obtained a judgment for $106.80 costs and after paying some witness fees gave Maud a check for $43.06 as the balance of the costs coming to her.

For nearly a year the relations between Maud and Stoner were amicable. During that period and in January, 1944, they effected an exchange of properties with Mrs. Keller and in March, 1944, purchased the widow's remaining interest in the Keller properties. Stoner prepared a deed of Maud's interest to her and her husband, Melvin, as joint tenants. Maud and Melvin and Stoner purchased Mrs. Keller's interests by obtaining a loan of $15,000. For the purpose of these transactions a detailed appraisal of the real properties had been obtained which indicated their market value to be approximately $37,700, and their annual net income before deducting depreciation to be about $5,700. Cora managed the Keller properties, turning over one-third of the net rentals to Stoner.

In August, 1944, differences developed, whereupon Maud commenced action No. 495724 for declaratory relief, reformation of the contract on the grounds of mutual mistake of fact and of law, and a declaration that Stoner held the interest received by him as a constructive trustee on the theory that the defendant, if he was entitled to anything under the contract, was entitled to no more than one-third of the excess over the value of Maud's interest under the will (alleged to be about $15,000) or $663.88. Stoner then brought an action

against the Calverts to partition the property. The two actions were set for trial at the same time. When they came on for hearing Stoner moved for judgment on the pleadings in action No. 495724. The motion was granted as to the first cause of action but was denied as to the additional three causes of action. Permission was granted to amend the complaint. After the interposition of a demurrer to an amended complaint, Maud dismissed action No. 495724 and by other counsel commenced the present action against Stoner. By an amended complaint the plaintiffs sought in a single cause of action to impress a constructive trust on the property in which the defendant claimed an interest, and to compel a reconveyance and an accounting, on the theory that he had been guilty of fraud and unfair dealings in the acquisition of the one-third interest in her distributive share of the Keller properties. This action was consolidated with the defendant's partition suit. After a protracted trial the court made findings absolving the defendant of any unfair dealings with the plaintiffs and adjudged that they take nothing by their action. An interlocutory decree was entered in the action for partition. The Calverts appealed from both judgments.

The trial court made separate findings in each case. The appellants' contentions, however, are confined to an attack on the findings in their action against the defendant for equitable relief. If those findings are supported and the judgment in that action is otherwise correct there is no ground for reversal of the judgment in the partition suit.

The appellants' contentions are numerous. They may be considered under three headings: (1) that the findings are not supported by the evidence; (2) that the employment contract was against public policy and void; and (3) that asserted inconsistent findings on the issue of res judicata require reversal.

The plaintiffs charged the defendant with deception in obtaining an employment contract which was not the contract authorized by Maud and that the assignment secured to him more than the contract provided for; also that the contract was presumptively fraudulent for the reason that the relationship of attorney and client was in existence at the time the contract was negotiated and entered into, and that the presumption had not been overcome.

The defendant had previously represented the plaintiff in a guardianship proceeding, but a final hearing in that matter was had in March, 1940, a final accounting was

approved, the matter was closed, and the defendant delivered to Maud the files in his possession. Although there is evidence that the parties remained in touch with each other and on defendant's recommendation another attorney represented Maud in another matter, there is sufficient evidence to support the trial court's finding to the effect that the relationship of attorney and client had been terminated prior to the negotiations leading to the execution of the employment contract. If there be doubt on this point the evidence with reference to the conduct of the defendant in negotiating the contract was sufficient upon which to conclude that the presumption was overcome and should not prevail.

The evidence was in direct conflict on the question whether the assignment executed by the plaintiff was with her knowledge of the contents and her comprehension of its effect; also as to when and where the instrument was executed. The appellants admit "that their recollection may have been at fault; that as to some circumstances testified to by them they were in error," but they assert that this "is all beside the point." It is, however, axiomatic that the credibility of the witnesses and the weight of the evidence were matters for the trial court, and that it is the duty of the appellate court to give effect to all reasonable inferences and intendments in support of the judgment. There is sufficient in the record concerning the conduct of the Calverts at the time of the execution of the assignment and thereafter when the various transfers and purchases of the Keller properties took place upon which the trial court could reasonably find that Maud and Cora fully comprehended the meaning and effect of the assignment and freely acquiesced in the basis of one-third to the defendant of any recovery in the probate proceeding. In this connection the court could justifiably conclude that the parties took into consideration the alleged value of Maud's interest under the will in relation to the appraised value of her distributive share, the hazards of a technical contest of the will, and the amount of work involved in establishing the invalidity of the trust provisions. Bearing in mind the relationship of confidence and trust generally existing between attorney and client, it is a reasonable inference from the evidence that the plaintiffs executed the assignment to secure to the defendant what they considered was due to him in the event of recovery by Maud. Additional matters urged by the plaintiffs bear on the credibility to be

attached to the defendant's testimony and do not require special notice.

The employment contract contained a provision that Maud would not make a settlement of her claim against the estate or enter into a compromise of the litigation except in the presence of the defendant and with his approval; but that in the event she violated that provision she would nevertheless pay him on the contract basis. It is contended that the foregoing provision renders the contract void as against public policy and that in any event the defendant was entitled only to the reasonable value of the services rendered.

It has been stated as a general rule that unless expressly permitted by statute a contingent fee contract providing that the client may not compromise the suit without the consent of his attorney is against public policy and void. The foundation of the rule seems to be a policy which permits parties to settle their differences amicably without the intervention of their attorneys. However it is also recognized that in some jurisdictions the improper provision is deemed severable and does not necessarily invalidate the entire contract. In other jurisdictions the contract may or may not be condemned as against public policy depending on the circumstances of the case. (7 C.J.S. p. 1066, and cases cited; 121 A.L.R. 1122 et seq., and cases cited.)

In reliance on *Mathewson* v. *Fitch*, 22 Cal. 86, holding that contingent fee contracts were not contrary to the public policy or the law of the state, it was held in *Hoffman* v. *Vallejo*, 45 Cal. 564 (1873), without discussion, that a contingent fee contract containing a similar prohibition upon the client was not void as against public policy, and the court sustained specific enforcement of the contract after the client had in secret settled the litigation and received property pursuant to the compromise.

In *Hall* v. *Orloff* (1920), 49 Cal.App. 745 [194 P. 296], a contingent fee contract prohibited the settlement of the case by the client except with the attorney's knowledge and consent and provided in any such event for the payment to the attorney of $1,000 minimum. The client without the attorney's consent dismissed the action but without receiving any consideration. The attorney sought to enforce the provision for the minimum $1,000 fee. After distinguishing the Hoffman case, it was held that such a provision was against public policy and void because it amounted to the imposition of a penalty; that in such case the attorney's measure of recovery

upon abandonment of the action by his client was the reasonable value of the services rendered.

In *Klein* v. *Lange,* 91 Cal.App. 400 [267 P. 130], it was observed that a contingent fee contract which did not prevent the client's settling the case at any time but provided for payment of an agreed amount in case of settlement was not illegal. There a secret compromise was reached by the parties to the litigation and an effort made to deprive the attorney of the contract compensation. The court's observation is not necessarily an implication that the contract, had it contained a provision against compromise without the attorney's consent, would be invalidated *in toto.*

It is unnecessary in this case to determine whether the particular provision is invalid as against public policy. It is sufficient to observe, assuming such invalidity, that in this state as in many other jurisdictions, the compensation features of the contract are not thereby deemed affected if in other respects the contract is lawful. Some of the cases in other jurisdictions holding or recognizing the similar limited effect of the unlawful prohibition are: *Sizer* v. *Midland Valley R. Co.,* 141 Ark. 369 [217 S.W. 6]; *Buckeye Cotton Oil Co.* v. *Winn,* 148 Ark. 654 [229 S.W. 734]; *Nichols* v. *Orr,* 63 Colo. 333 [166 P. 561, 2 A.L.R. 449]; *Granat* v. *Kruse,* 114 Ill.App. 488 (error dismissed 213 Ill. 328 [72 N.E. 744]); *Newport Rolling Mill Co.* v. *Hall,* 147 Ky. 598 [144 S.W. 760]; *Louisville Ry. Co.* v. *Burke,* 149 Ky. 437 [149 S.W. 865]; *Jellico Coal Mining Co.* v. *Pope,* 292 Ky. 171 [166 S.W.2d 287]; *Davis* v. *Great Northern Ry. Co.,* 128 Minn. 354 [151 N.W. 128]; *Beagles* v. *Robertson,* 135 Mo.App. 306 [115 S.W. 1042]; *Wright* v. *Kansas City, Ft. S. & M. R. Co.,* 41 Mo.App. 518 [126 S.W. 517]; (see also *Lipscomb* v. *Adams,* 193 Mo. 530 [91 S.W. 1046, 112 Am.St. Rep. 500]); *Gillespie* v. *American Car & Foundry Co.* (1917 Mo.App.), 194 S.W. 1064; *Downey* v. *Northern P. R. Co.,* 72 Mont. 166 [232 P. 531]; *Syme* v. *Terry,* 125 App.Div. 610 [110 N.Y.S. 25] (distinguishing *In re Snyder,* 190 N.Y. 66 [82 N.E. 742, 123 Am.St.Rep. 533, 14 L.R.A.N.S. 1101], where the provision was held inseparable but the attorney was not limited to the contract basis in showing the reasonable value of services rendered); *In re Speranza,* 186 N.Y. 280 [78 N.E. 1070]; (see also *In re Gilman's Administratrix,* 251 N.Y. 265 [167 N.E. 437]; *Ward* v. *Orsini,* 243 N.Y. 123 [152 N.E. 696]); *Howard* v. *Ward,* 31 S.D. 114 [139 N.W. 771]; *Missouri K. & T. Ry. Co.* v. *Wood* (1912, Tex.Civ.App.),

152 S.W. 487; *Potter* v. *Ajax Min. Co.*, 22 Utah 273 [61 P. 999]; *Butler* v. *Young*, 121 W.Va. 176 [2 S.E.2d 250, 121 A.L.R. 1119 and cases cited at pp. 1120, 1121]. The foregoing cases recognize or imply that the assumed unlawful provision could be called into question only if the attorney were suing upon it. Here no compromise was involved, nor any effort of the parties to the litigation to effect one, nor any reliance by the defendant upon the provision. On the contrary the plaintiff is attempting to avoid the effect of an executed contract on the ground that the contract was against public policy. This fact alone would seem to be a complete answer to the plaintiff's contentions in this connection.

Furthermore, assuming the invalidity of the entire contract by reason of the inclusion of the provision, the defendant would be entitled to compensation based on the reasonable value of services performed. (*Rosenberg* v. *Lawrence*, 10 Cal.2d 590 [75 P.2d 1082].) There is sufficient in the record to indicate that the services of the defendant were reasonably worth the compensation received by him. In any event there is no basis for recoupment by the plaintiffs of any part thereof in the absence of an affirmative showing of fraud or bad faith on the part of the defendant in his dealings with his client. As indicated the findings on those issues were favorable to the defendant and supported by the evidence.

The asserted inconsistency in the court's findings relates to the effect of the alleged finality of the decree of distribution and of the judgment in action No. 495724. The allegations in the amended complaint, the defendant's denials and affirmative defenses, and the findings of the court thereon may be summarized as follows:

The plaintiffs alleged that there was no necessity for "contesting the Will"; that the remedy was by application for letters of administration in Maud's behalf; that the only proper way for the defendant to recover his compensation was in his capacity as attorney for her as an administratrix and payable out of the assets of the estate; that there were other ways by which the invalidity of the will could be determined without a "contest of said Will"; and that all of these matters were well known to the defendant. The answer was by way of denial and an affirmative defense to the effect that the matters so alleged were adjudicated in the probate proceeding and in action No. 495724. The court found the plaintiff's allegations to be untrue and that the acts and

things to be done and performed by the defendant as attorney for the plaintiff were fully executed by him and fully adjudicated and determined in the probate proceeding and in action No. 495724. The court made the following additional findings responsive to allegations in the amended complaint and the answer: that the assignment securing to the defendant his one-third interest in the recovery had become merged in the decree of distribution in the probate proceeding which had become final; that the plaintiff was not at any time prevented from appearing in the probate proceeding; that she did appear therein and approved all of the matters and things which occurred; that she was the prevaling party and her rights in said proceeding had been fully adjudicated and determined; that the voluntary dismissal in action No. 495724 pertained only to the second, third, and fourth causes of action; that the judgment as to the first cause of action therein was on the merits and that it had become final; that her present action was not an attempt to state a cause of action which was barred by the decree of distribution or by the judgment in action No. 495724; and that the merits of the present action were not adjudicated by the judgment in that action.

It is apparent from the foregoing findings and conclusions that the court considered the first count for declaratory relief in action No. 495724 to be based on the alleged extrinsic fraud in the probate matter whereby Maud was deprived of her day in court and that the foregoing allegations in the amended complaint were addressed to that issue. The plaintiff also alleged and the court found that by the judgment in action No. 495724 the trial judge expressly preserved to the plaintiff the opportunity by amendment of the second, third and fourth causes of action to state a cause for fraud sufficient to establish a constructive trust of the property received by the defendant. In any event the asserted inconsistency in the findings, if it exists, is of no material consequence as affecting the rights of the plaintiff. The court was careful to indicate that the proceedings in probate and the judgment on the pleadings as to the first count in action No. 495724, affected only the right of the plaintiff to attack the decree of distribution collaterally and did not prevent her from prosecuting a cause of action to create a trusteeship on the part of the defendant on the ground of fraud. Whether or not the trial court's conclusions on the effect of the prior decree and judgment are correct is immaterial, since in any

event the plaintiff has been afforded a full and fair trial on the issues of the fraud material to her alleged cause of action and those issues have been resolved adversely to her on sufficient evidence. No other points require discussion.

The judgment in each action is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellants' petition for a rehearing was denied December 16, 1948.