**MATTIONI, MATTIONI & MATTIONI, LTD.**

v.

**ECOLOGICAL SHIPPING CORP., et al.**

**Civ. A. No. 79–4360.**

United States District Court,
E. D. Pennsylvania.

Sept. 9, 1981.

On Motion For Reconsideration
Jan. 8, 1982.

Harold Cramer, Philadelphia, Pa., for plaintiff.

Franklin Poul, Philadelphia, Pa., for defendants.

OPINION *

LOUIS H. POLLACK, District Judge.

This action grew out of an application for injunctive relief filed initially in November 1979 by the plaintiff law firm, Mattioni, Mattioni & Mattioni, against numerous defendants, including Ecological Shipping Corporation and several of its officers, in the Pennsylvania Court of Common Pleas. That injunctive proceeding sought to halt a settlement which was just about to be consummated between Ecological and Sun Shipbuilding and Dry Dock Company, also one of the defendants in the Court of Common Pleas, resolving litigation which had been in process for some three years in which the plaintiff law firm, Mattioni, Mattioni & Mattioni, had been representing Ecological.

The settlement which was worked out in the fall of 1979 was the result of discussions between Ecological and its New York counsel and Sun and its counsel, which plaintiff, Mattioni, Mattioni & Mattioni, essentially

* This opinion is a modestly-edited version of the transcript of my bench opinion of September 8, 1981. The purpose of the editing has been to eliminate (a) typographical and punctuation er- rors, and (b) mistakes of syntax. To the extent of the editing, this version, and not the bench opinion as transcribed, constitutes my ruling.

played no role in and received some, but hardly complete, information about.

The essence of the Mattioni lawsuit against Ecological and the others was to protect what Mattioni fully expected would be a very substantial fee resulting from its extensive labors on Ecological's behalf. The fee basis rested on a contract of retainer between Mattioni and Ecological. The precise terms of that retainer went through some process of change in the course of the attorney/client relationship, but a very important element of the retainer agreement was the following provision: "Ecological Shipping Corp. agrees not to compromise its suit without its attorneys' consent, and said attorneys are not authorized to do so without client's consent."

I say that was a very important element of the agreement for the reason that in the complaint filed in the Court of Common Pleas that provision of the agreement is recited verbatim in Paragraph 23 and, though it is true that the complaint contains several counts, and the defendants are not identical from count to count since the counts reflect a variety of theories of recovery, Paragraph 23 together with other introductory paragraphs, is a predicate to every one of the causes of action.

I emphasize this because central to the motions and cross-motions which are before me today a motion for partial summary judgment by plaintiff; and a cross-motion for summary judgment or, in the alternative, for partial summary judgment, by defendants—what has chiefly been at issue is the validity of that provision insofar as it recites that Ecological was not at liberty "to compromise its suit without its attorneys' consent."

It is the defendants' position that an attorney consent provision is unenforceable and that it taints the entire attorney/client relationship, that plaintiff, Mattioni, Mattioni & Mattioni, cannot recover in the terms in which their retainer agreement was cast, which was largely a contingent agreement, or on quantum meruit.

Defendant also argues that the very bringing of the lawsuit and what defendants see as the excessive terms in which the claim for fees was calculated, at least under one theory of the plaintiff's entitlement, disallow any kind of recovery as a betrayal and undercutting of the attorney obligation to a client, at least in a situation in which the form of the proceeding was one which had at least the potential of precluding an advantageous settlement of the Ecological/Sun litigation—advantageous, that is to say, from Ecological's point of view.

Plaintiff for its part, of course, argues that the retainer provision to which I have referred is valid and enforceable and, beyond that, argues that, even if not valid, its validity is of no moment because it in no way infected the central attorney/client relationship and, hence, may be regarded as a severable provision.

Finally, of course, the plaintiff argues that even if the provision is bad and infects the entire retainer, it does not preclude an appropriate fee to plaintiff on a theory of quantum meruit.

The central issues then clearly rotate around the validity of a provision, a so-called attorney's consent provision, of the form embodied in this retainer agreement.

There has been extended discussion of authorities not alone in Pennsylvania but in many other jurisdictions, including references to cases in the United States Supreme Court. *See, e.g., McGowan v. Parish*, 237 U.S. 285, 35 S.Ct. 543, 59 L.Ed. 955 (1915). There has been the intriguing suggestion by defendants that the issue should be regarded as one of federal law because it so closely attends on the practice of law in the federal courts. Without suggesting that there may not be aspects of the character of law practice in the federal courts which should be regarded as directly within the supervisory domain of federal judges, so that federal standards can be asserted and policed whether or not the same standards would obtain in state courts, I am not persuaded that the counter-*Erie* thesis is applicable here.

There is no such glaringly clear standard laid down by any of the federal

authorities that I can see. The cases, to the extent that there are federal cases, can be looked to as, indeed, plaintiff has attempted to, to support an arrangement of this kind. I am not persuaded that they are significantly supportive but I certainly don't think that they give a federal trial judge the kind of guidance which would allow him or her to announce a federal standard for all to behold and to have beheld for years and decades past. So I regard the matter as one which should be resolved by Pennsylvania law, if it is findable.

The debate between the parties has, so far as it relates to Pennsylvania authorities, really focused on three cases, one in the Superior Court, *Shoup v. Shoup*, 25 Pa.Super.Ct. 552 (1904), a decision which plaintiff insists is a holding as to the enforceability of an attorney's consent provision, and two cases in the Pennsylvania Supreme Court, *Wahl v. Strous*, 344 Pa. 402, 25 A.2d 820 (1942) and *Behrend v. Yellow Cab Company*, 441 Pa. 105, 271 A.2d 241 (1970).

I find *Shoup v. Shoup, supra*, a case of ambiguous authority. It may be that the agreement the Superior Court talked about there was explicitly an attorney's consent provision, but, frankly, that doesn't leap from the printed page. It is, to be sure, a case which recognizes and, indeed, sanctions an attorney's litigating to challenge a settlement that a client who had just discharged the attorney was bent upon and which the attorney thought was dangerous not only to the client's interests but to his own independent interest as an assignee or former assignee of part of the recovery.

*Wahl v. Strous, supra*, is not a case, as one follows Justice Stern's opinion, in which an attorney consent provision was part of the agreement but it was a case in which Justice Stern, nonetheless—by dictum, to be sure, but by substantial and advertent dictum, to which authorities were appended—recited—"Indeed, it is almost universally held that even if a power of attorney provides in express terms that the client is not to have the right himself to compromise or settle his claim, such a provision is void as against public policy. Settlements are fa-

vored by the law which, therefore, frowns upon arrangements whereby a client would need his attorney's permission to settle a suit and it is immaterial that the attorney may be interested in the sense of his compensation being contingent upon the result of the litigation or settlement."

The vitality of the case was acknowledged by the Pennsylvania Supreme Court in *Behrend, supra*, in which a portion of Justice Stern's language was cited with approval. I find that Justice Stern's language, although technically dictum (albeit dictum which arguably at least builds structurally into the holding), is the clearest statement of Pennsylvania law on this subject.

Also, I would bring to the attention of the parties that there is an older case by an inferior Pennsylvania court which seems to have addressed the issue directly, *Murphy's Estate*, 13 County Court Rep. 70 (1893). At page 74 of that decision, one finds the following: "We think a sound public policy, one which duly regards the purpose for which courts are established and the relation of attorneys to the courts and their clients and of parties to each other, forbids that an attorney, besides agreeing for a contingent fee, should so arrange with his client as to preclude him from negotiating with his adversary and agreeing upon satisfactory terms of settlement of the controversy."

I do not argue that Presiding Judge Sealy's opinion was authoritative when announced, but I find nothing that indicates any departure from what Judge Sealy said and Justice Stern some 50 years later was to say.

So I come to the conclusion that, to the extent that there is a Pennsylvania line of doctrine, it supports the defendant's position that a provision such as that contained in its retainer agreement with Ecological is void as against public policy.

What flows from that? The suggestion that the void provision is severable and may be disregarded seems to me simply inconsistent with the central role the provision

played in the inception of this litigation. I think it quite clear that plaintiff saw it as one of the sharpest and straightest arrows in its quiver and drew its complaint on that theory. So I regard it as a nonseverable provision and an unenforceable provision.

Does it follow from this that, as defendants would argue, plaintiff is disallowed not only to enforce the agreement but to recover at all from the work done? Here I find no Pennsylvania authority compelling an answer one way or another.

Looking to the general survey of doctrine, I think the answer that I would anticipate that would come from the Pennsylvania courts is that which is to be found in the following discussion in Am.Jur. In 7 Am. Jur.2d Attorneys ¶ 270 (1980), the following appears: "There is a distinction between contracts that are illegal merely because of some improper provision therein relating to compensation or because they contain an illegal stipulation against the client compromising a claim without consent of the attorney, and contracts that are illegal because services to be rendered thereunder are in their nature intrinsically illegal, improper or against public policy. With respect to contracts of the latter kind, it is apparent that every objection that could be urged against permitting recovery on the contract would apply with equal force to a recovery on quantum meruit. With respect to contracts of the kind first mentioned, a recovery is allowed on quantum meruit for the reasonable value of the legal services."

That language, which is to be found at pages 304 to 305 of 7 Am.Jur.2d, seems to me a sensible rule. The rule contended for by defendants seems to me of a draconian nature not called for by the policy interests involved.

In connection with the Am.Jur. annotation, I would also call attention to the earlier annotation in ALR, 200 ALR 2d pages 1378 et seq.

■ So I conclude that the presence in the retainer agreement of the void attorney's consent provision, though it disallows plaintiff from proceeding to sue on the terms of the contingency fee agreement as written, does not disallow plaintiff from proceeding in quantum meruit.

■ I think it apparent that what I have said means also that I conclude that I am quite unpersuaded by defendant's alternative position that the bringing of this litigation by itself and the, as defendants see it, extravagance of plaintiff's claim disallows any recovery. I see nothing in the record to show that plaintiff was proceeding in bad faith in attempting to undercut Ecological's opportunity to settle this litigation.

Though I have found the provision of the retainer agreement that plaintiff chiefly relied on unenforceable, I find nothing to suggest that it was such a self-evident matter that a provision of this kind was an outrageous intrusion into an attorney/client relationship as to lead me to any view that plaintiff could have perceived the injunctive action which it initiated in the Court of Common Pleas as substantially different in kind from the effort that plaintiff attorney in the much humbler *Strous* litigation took. At all events, a defense running in that vein seems to me unpersuasive.

So what I conclude is, in effect, by convergence of the two motions, that plaintiff's motion for partial summary judgment should be granted in the sense that it is a motion for a determination that Ecological is liable on a theory of *quantum meruit* and no other and, conversely, defendants' motion for summary judgment is denied to the extent that it is a motion for plenary summary judgment, but it is granted to the extent that it is a motion for summary judgment limiting plaintiff's recovery to *quantum meruit.*

The effect of my resolution of these two competing motions is then to frame the trial, if this matter is to go forward to trial, as a proceeding in quantum meruit to determine the amount appropriately due to the plaintiff law firm. I put it to the parties that it may be a corollary of what I have held that the bonds which have been posted at the inception of this litigation are now subject to modification. On the defendants' side, I believe defendants' bond is for

$1,500,000. I do not understand plaintiff's *quantum meruit* claim to be realistically for higher than $1,000,000 at this point and would think that a reduction of the bond to $1,000,000 would be appropriate.

Conversely, I think that plaintiff's bond, which I think is in the amount of $500,000, would wash out at this point. If what I have suggested is matter for dispute, then I will ask you to reserve that dispute for further submissions.

### ORDER

For the reasons set forth from the bench at the hearing held on September 8, 1981, it is hereby ORDERED that:

1. Plaintiff's motion for partial summary judgment is GRANTED insofar as I have determined that the defendant is liable in *quantum meruit* for the reasonable value of the legal services provided by the plaintiff. In granting this motion, I am also in effect granting defendant's alternative motion for partial summary judgment limiting plaintiff to a *quantum meruit* recovery.

2. Defendant's motion for summary judgment, which would have denied plaintiff any recovery, is DENIED.

3. The parties will submit memorandum on the reduction of the outstanding bonds within ten (10) days from the date of the hearing.

### MEMORANDUM

#### On Motion For Reconsideration

After hearing oral argument, I entered an Order on September 9, 1981, which, for reasons announced in a bench opinion, granted in part plaintiff Mattioni's motion for summary judgment to the extent that it was a motion for a determination that defendant Ecological is liable on a theory of *quantum meruit* and granted in part de-

fendants' motion for summary judgment insofar as it was a motion to limit plaintiff's recovery to *quantum meruit*.[1] Plaintiff had contended that Ecological should be held liable for breach of the contingent fee agreement under which Mattioni had rendered legal services representing Ecological in litigation with Sun Shipbuilding and Dry Dock Company, or, in the alternative, that Mattioni should recover the reasonable value of the legal services rendered. In response, Ecological had argued that plaintiff was not entitled to any recovery since the fee agreement should be considered void and unenforceable due to the attorney consent clause which it contended violated public policy, or, in the alternative, that plaintiff's recovery be limited to *quantum meruit*. I concluded that the attorney consent clause in the fee agreement was void because it violated the public policy favoring settlement; and since plaintiff had tried to enforce this clause directly in seeking to enjoin a proposed settlement between Ecological and Sun, I further concluded that the proper remedy was to limit plaintiff to a recovery based on *quantum meruit* rather than simply striking the attorney consent clause and enforcing the remainder of the fee agreement.

While apparently accepting my conclusions with respect to the validity of attorney consent clauses, plaintiff in its motion to reconsider now challenges the second element of my ruling concerning recovery in *quantum meruit*. Plaintiff argues that even though the attorney consent clause was properly deleted because it violated public policy, the remainder of the contract should have been enforced since the attorney consent clause is, according to plaintiff, a completely separable part of the contract. In the alternative, plaintiff moves for certification of the question to the Court of Appeals pursuant to 28 U.S.C. § 1292(b).[2]

---

1. Plaintiff's motion for partial summary judgment was directed solely against defendant Ecological. However, all responsive pleadings have been filed on behalf of Ecological, Alpine Geophysical Associates, Ronald Durning, Vlaho Bruer, Peter Chase, Steven Elbaum, and Gifford, Woody, Palmer & Serles. These parties

remained in the case following my December 21, 1979 Order dismissing Peter Marvin, Pepper, Hamilton & Scheetz, and the Sun companies.

2. *See* note 4 *infra.*

## I.

Relying primarily on *Richette v. Pennsylvania R. R.*, 410 Pa. 6, 187 A.2d 910 (1963), plaintiff contends that this court is under an obligation to follow that Pennsylvania authority which, in plaintiff's view, requires a court to sever a provision that contravenes public policy and to enforce the remaining compensation terms of the contract.

In *Richette*, the Pennsylvania Supreme Court did decide that, notwithstanding that an irrevocability clause in a contingent fee contract was in its view void, the plaintiff-attorney could nonetheless recover damages based on the contract from third parties who had fraudulently interfered with the attorney's contractual relations with his client. I do not, however, concur in plaintiff's view that *Richette* compels the conclusion that the Pennsylvania Supreme Court would, in the present case, enforce the contingent fee aspect of plaintiff's retainer agreement as opposed to granting recovery in *quantum meruit*. The defense contention considered and rejected by the trial court in *Richette* was that the irrevocability clause "renders the contract illegal and void in its entirety as against public policy." Record in *Richette* at 874a–875a. Similarly, as Justice Musmanno observed in his opinion for the Supreme Court, defendants "ask[ed] this Court to enter judgment n. o. v. on the compensatory verdict." 187 A.2d at 917. In both courts the issue of plaintiff's entitlement was posed in all-or-nothing terms. In neither court was consideration given to the middle ground of *quantum meruit*. And so I remain persuaded that the Pennsylvania Supreme Court would, if the issue were squarely posed, subscribe to the *quantum meruit* analysis set forth and case-documented in 7 *Am.Jur.* 2d (Attorneys § 270) (1980), on which I relied in my September 9 bench opinion.

The cases governing my opinion are grounded on the theory that where an offending clause is closely linked to the compensation provisions and is relied on directly by a plaintiff seeking to enforce the compensation terms, the entire contract must be considered tainted and *quantum meruit* is therefore the only appropriate remedy. *See, e.g., In re Snyder*, 190 N.Y. 66, 82 N.E. 742 (1907). *See generally Annotation*; 100 A.L.R.2d 1378 at § 5 (1965). *Cf. Wunschel v. Clabaugh*, 291 N.W.2d 331 (Iowa 1980); 6 A Corbin, *Contracts* § 1520 at 756 (1962 ed. & 1980 Supp.) (discussing principles guiding severability of contract terms). By contrast, the court in *Richette* did not address the alternative remedy of *quantum meruit* principally because, in my reading of the case, it was convinced that the illegal irrevocability clause (a) did not affect the compensation provisions which could be regarded as independent, and, perhaps most importantly, (b) was not relied on directly by Mr. Richette to obtain equitable relief or to aid otherwise in enforcing the compensation provisions. *See Richette, supra*, 410 Pa. 6, 187 A.2d at 912, 917–18. Thus, while the rationale of the authorities collected in 7 Am.Jur.2d § 270 does not fit the facts of the *Richette* case, that rationale is clearly applicable to the situation presented in this case since plaintiff Mattioni did use the attorney consent clause to seek to enjoin preliminarily a pending settlement between defendant Ecological and Sun.

Moreover, *Richette* and this case stand in significantly different postures: Although Mr. Richette's client was a party defendant at the inception of that litigation, he was dropped as a party before the case was disposed of in the Court of Common Pleas; Mr. Richette's claim—denominated as one sounding "in trespass"—was judicially perceived not as an action for breach of the (void) irrevocability clause of the retainer agreement but as one to recover damages from third parties for interference with the contractual relationship between attorney and client.[3] By contrast, Mattioni's suit

---

**3.** *See* Record in *Richette* at 870a (Opinion of Reimel, J.); Record at 15a (Complaint in Trespass); *Richette, supra*, 410 Pa. 6, 187 A.2d at 912. Richette's complaint referred to the irrev- ocability clause, *see* Complaint in Trespass ¶ 7, Record at 16a, but only as part of a general recitation of background facts; there was no allegation in the Complaint that defendants had

began as an action seeking, on the basis of the (void) attorney consent clause, to prevent Mattioni's client and others from consummating a negotiated settlement; many of the original defendants have been dropped from this litigation, but the client—Ecological—remains as the principal defendant and, indeed, as the only target of Mattioni's motion for partial summary judgment.

In sum, after reconsidering my earlier decision, I reach the same conclusion: A Pennsylvania court faced with the specific facts of this case would find (a) that the attorney-consent clause contravened public policy, and (b) that plaintiff's reliance on that clause was a proper ground for refusing to enforce the remaining contingent fee provisions, thereby limiting plaintiff's recovery to *quantum meruit.*

## II.

■ Plaintiff has also moved, in the alternative, for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Here I think plaintiff is on sound ground.[4] Before certifying a question to the Court of Appeals, a trial judge must determine that (a) the certified order involves a controlling question of law; (b) there is substantial ground for difference of opinion with respect to that question; and (c) immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b) *See generally Zenith Radio Corp. v. Matsushita Electric Indus. Co.,* 478 F.Supp. 889, 943–46 (E.D.Pa.1979). In addition, a district court must keep in mind the Third Circuit's admonition that section

1292(b) "is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation." *Milbert v. Bison Laboratories, Inc.,* 260 F.2d 431, 433 (3d Cir. 1958). *See also Mazzella v. Stineman,* 472 F.Supp. 432, 436 (E.D.Pa. 1979).

■ With respect to the first consideration, it is apparent that the question whether plaintiff's recovery should be framed by the contingent fee agreement or cast in *quantum meruit* is a controlling question of law. Since my conclusion on the severability question "if erroneous, would be reversible error on final appeal," *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3d Cir.) (en banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974), the first condition for certification pursuant to section 1292(b) has been met.

Second, while I remain convinced that my conclusion concerning the application of the *Richette* decision to this case is correct, I also recognize that the case could be interpreted differently and that there is authority in other jurisdictions which supports an alternative remedy that would involve severance of void clauses and enforcement of the remainder of the contract. Therefore, a sufficiently substantial ground for difference of opinion exists to warrant certification of this question.

Third, an interlocutory appeal at this point in the litigation appears to be an appropriate device to advance materially the ultimate resolution of the case. Pursuant to my September 9 Order, a substantial amount of trial time would be devoted to determining the reasonable value of the

---

violated an obligation arising under that clause. *Compare* ¶ 23 of Complaint filed by Mattioni.

**4.** In its motion to reconsider, plaintiff raised only the question of severance of the attorney-consent clause, but included the threshold question of whether an attorney consent clause violates public policy in its motion for certification for interlocutory appeal. However, plaintiff has not presented any arguments concerning the validity of such clauses in its motion for certification that were not addressed fully in my September 9 Order, and, indeed, the *Richette* case relied on by plaintiff in its motion to reconsider arguably further supports my

conclusion that a Pennsylvania court would hold attorney-consent clauses to be void. Since I do not find that there is a substantial ground for difference of opinion on the question of whether attorney-consent clauses violate public policy, I will not include that issue as part of my formulation of the certified question pursuant to Third Circuit Rule 23. Of course, the Court of Appeals is not bound by my formulation and may address other issues presented in the certified order. *Consolidated Express, Inc. v. New York Shipping Ass'n,* 602 F.2d 494, 502 (3d Cir. 1979).

legal services rendered by plaintiff under a *quantum meruit* theory. By contrast, if that order were found to be erroneous and recovery grounded instead on the contingent fee contract, the factual inquiry at trial would be confined to the relatively simpler calculation of damages based directly on the contract. Thus, the overall duration of this case could be reduced significantly if the question of the appropriate remedy were resolved now, rather than waiting for an appeal from a final judgment and a possible reversal which would require a new trial on a different set of factual issues. There are, of course, other triable issues in this case—in particular, those concerning plaintiff's conspiracy allegations—but, as the extensive briefing on the cross motions for summary judgment suggests, the question of the appropriate remedy is at the heart of this case.

Finally, I must address the additional consideration imposed by the Third Circuit that certification be used sparingly and reserved therefore for exceptional cases. *Milbert v. Bison Laboratories, supra,* 260 F.2d at 433. Compared to large antitrust cases, which require an unusual amount of stamina and time on the part of both courts and attorneys, *see, e.g., Zenith Radio Corp. v. Matsushita Electric Indus. Co.,* 494 F.Supp. 1190, 1244 (E.D.Pa.1980), this is not an obviously "exceptional" case. However, the sizable damages that are at stake and the considerable effort that has already been devoted to this case convinces me that this is not merely ordinary litigation. In my judgment, the question presented by the order which is sought to be certified is vitally important to the expeditious resolution of this case and the authority is sufficiently divided that certification is appropriate.

For the foregoing reasons, I will certify, in the accompanying Order, the following controlling question of law: When an attorney seeks to enforce against his client a contingent fee agreement containing a void attorney-consent clause, is the proper remedy under Pennsylvania law (a) severance of the void clause and enforcement of the remaining contract, or (b) recovery based on *quantum meruit?* *See* Third Circuit Rule 23.

