**PARENTS AGAINST DRUNK DRIVERS, Assignee of Robert J. Debry, Plaintiff and Appellant,**

v.

**GRAYSTONE PINES HOMEOWNERS' ASSOCIATION, Counterclaimant and Respondent,**

v.

**John WEBSTER, Roy Nielson, Florance Lewon, Carlos Croft, and Louise Mallonee, as the Board of Managers of the Graystone Pines Homeowners' Association, on behalf of the owners of all units in Graystone Pines Condominiums, Intervenors, Counter-plaintiffs and Respondents.**

No. 880430–CA.

Court of Appeals of Utah.

March 7, 1990.

---

Edward T. Wells, William F. Bannon, and Robert J. Debry, Salt Lake City, for plaintiff and appellant.

L.R. Gardiner, Jr., and Thomas R. Vuksinick, Salt Lake City, for counterclaimant and respondent Graystone Pines Homeowners' Ass'n.

Before DAVIDSON, BILLINGS and ORME, JJ.

BILLINGS, Judge:

Robert J. Debry ("Debry"),[1] appeals from an order granting partial summary

---

1. Debry, during the pendency of this appeal, assigned his interest in this lawsuit to Parents

judgment in favor of Graystone Pines Homeowners' Association ("Graystone"), limiting Debry's attorney fees to the amount set in the parties' contingency fee agreement. Graystone cross-appeals, claiming the court improperly awarded prejudgment interest to Debry. We reverse and remand.

Graystone retained Debry as its attorney to prosecute claims against the developers of Graystone Pines for faulty construction of 36 condominium units. Debry initially agreed to charge fifty dollars per hour for his legal services. Debry received more than $15,000 in legal fees and reimbursement for out-of-pocket expenses under this fee agreement.

In response to Graystone's concerns over the substantial costs of the litigation, Debry offered to change his fee structure from an hourly rate to a contingency fee. In a letter, which contains the provisions of the contingency fee agreement, Debry states that a "reasonable contingent fee for this type of case would be 60% of any recovery." Debry then reduced this 60% fee by one-half because of his estimate that the litigation was about half completed. Debry in the letter also required Graystone to give him full control over the settlement of the lawsuit.

This contingency fee agreement was accepted by Graystone in March of 1980, and litigation of the case continued. We do not discuss the details of the underlying lawsuit as they are irrelevant to this appeal. Graystone finally settled its claim against the developers in June of 1983 for $61,000. Debry refused to approve the settlement and accept a contingency fee of $18,300 as he believed the settlement was unreasonably low.

Debry then filed this action claiming, among other things, Graystone breached the fee agreement between the parties. The trial court granted Graystone's motion

for partial summary judgment limiting Debry's attorney fee to thirty percent of the settlement obtained by Graystone or $18,300. The court also awarded Debry prejudgment interest on his fees from the date of the settlement of the underlying lawsuit.

Summary judgment should be granted "only when it is clear from the undisputed facts that the opposing party cannot prevail." *Lach v. Deseret Bank*, 746 P.2d 802, 804 (Utah Ct.App.1987). When reviewing an appeal from summary judgment, we construe the facts and view the evidence in the light most favorable to the losing party. *Geneva Pipe Co. v. S & H Ins. Co.*, 714 P.2d 648, 649 (Utah 1986); *Lucky Seven Rodeo Corp. v. Clark*, 755 P.2d 750, 752 (Utah Ct.App.1988). "If ... we conclude that there is a dispute as to a genuine issue of material fact, we must reverse the grant of summary judgment and remand for trial on that issue." *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987). "Moreover, 'because a summary judgment is granted as a matter of law rather than fact, we are free to reappraise the trial court's legal conclusions.'" *Bergen v. Travelers Ins. Co.*, 776 P.2d 659, 662 (Utah Ct.App.1989) (quoting *Atlas*, 737 P.2d at 229)). *See also Lucky Seven*, 755 P.2d at 752.

## ATTORNEY'S RIGHT TO CONTROL THE SETTLEMENT OF A LAWSUIT

The existence of an attorney/client relationship is governed in Utah by both the ethical rules governing attorney conduct[2] and contract law.

■ A provision in a fee agreement giving an attorney control over the settlement of the case was contrary to the Utah Code of Professional Responsibility. Ethical consideration 7–7 provided, in pertinent part: "In certain areas of legal representa-

---

Against Drunk Drivers ("PADD") and asked leave of this court to substitute PADD as the appellant. This court granted Debry's request. However, since this action deals primarily with the collection of attorney fees, in order to avoid confusion, we will continue to refer to attorney Debry as the appellant.

2. The Utah Code of Professional Responsibility was the governing law in Utah in 1980 at the time the parties entered into the fee agreement, not the current Utah Rules of Professional Conduct.

tion not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and if made within the framework of the law, such decisions are binding on his lawyer."[3] *Id.*

In an early case, the Utah Supreme Court held a contractual provision granting an attorney control over the settlement of a lawsuit void as against public policy. *Potter v. Ajax Mining Co.*, 22 Utah 273, 61 P. 999, 1003 (1900). The court found such settlement control provisions run afoul of the policy to encourage settlements of causes and differences between persons. 61 P. at 1003.

Utah law which voids fee agreements giving control over settlement to the attorney is consistent with the view of a majority of jurisdictions. *Mattioni, Mattioni & Mattioni, Ltd. v. Ecological Shipping Corp.*, 530 F.Supp. 910, 913 (E.D.Pa.1982) (federal court found under Pennsylvania law that provision in fee agreement giving control over settlement to attorney void as against public policy); *Giles v. Russell*, 222 Kan. 629, 567 P.2d 845, 850 (1977) ("employment contract which prevents the client from settling without the consent of the attorney is void as against public policy"); *Cummings v. Patterson*, 59 Tenn.App. 536, 442 S.W.2d 640, 642 (1968) (counsel for appellant conceded that provision in contract requiring approval by counsel before securing settlement void and unenforceable as against public policy). *See generally* Annotation, *Validity of Stipulation, in Contract Between Attorney and Client, Prohibiting or Restricting Right of Latter to Compromise without Former's Consent, and Effect of Invalid Stipulation in that Regard upon Rest of Contract*, 121

A.L.R. 1122 (1934) (hereinafter "121 A.L.R. 1122").

The relevant provision in the parties' attorney fee contract gives Debry complete control over settlement:

> Clients are sometimes overly optimistic because they are not paying anything to their attorney. Thus, they may turn down reasonable settlement offers because it costs them nothing to gamble on the results of a trial. Therefore, I would accept the contingent fee *only* if I had complete and unfettered control over any settlement.

Based upon the foregoing, we agree with the trial court that the provision of the parties' contingency fee agreement giving Debry absolute control of the settlement of the underlying lawsuit is void. However, this does not resolve the issue before us. We must also determine what effect the voiding of this provision has on the remainder of the parties' fee agreement.

The courts do not agree on what effect the voiding of a provision in an attorney/client fee agreement which gives the attorney control over the settlement of a client's claim has on the remaining provisions of the fee agreement. *See* 121 A.L.R. 1122, 1127–29. Utah's courts have not directly analyzed this issue.[4]

Courts which find that the entire attorney fee contract is invalidated adhere to the general contractual doctrine of severability. These jurisdictions focus on the intentions of the parties. Generally, they conclude that the provision granting control over settlement of claims to the attorney was fundamental to the attorney's decision to enter into the fee structure and consequently it is not severable from the fee agreement. *Mattioni*, 530 F.Supp. at 913–14; *Cummings*, 442 S.W.2d at 643. In *Cummings*, the court found the provision

---

**3.** Although not changing the underlying principles of EC 7–7, Rule 1.2 of the Utah Rules of Professional Conduct (adopted by the Utah Supreme Court, effective January 1, 1988) enumerates certain exclusive areas of client control including "whether to accept an offer of settlement of a matter." *Id.* Thus, both EC 7–7 and Rule 1.2 give exclusive decision making to the client in the area of settlements.

**4.** Although the court in *Potter v. Ajax Mining Co.*, 22 Utah 273, 61 P. 999 (1900), enforced the contractual fee agreement after voiding a provision limiting a client's right to settle, it did not analyze the issue of severability.

restricting a client's right to settle its claims was not severable from the fee agreement because "[t]he attorneys drew the contract and apparently regarded as very material to their rights the provisions against settlement." *Cummings, Id.* In *Mattioni,* the court noted that the attorney viewed the provision as "one of the sharpest and straightest arrows in its quiver" and therefore found it nonseverable. *Mattioni,* 530 F.Supp. at 914.

A number of jurisdictions, on the other hand, have held a fee agreement valid despite the striking of a void provision limiting. a client's right to settle. *Calvert v. Stoner,* 33 Cal.2d 97, 199 P.2d 297, 300–01 (1948); [5] *Davis v. Webber,* 66 Ark. 190, 49 S.W. 822, 824–25 (1899).

■ We find no sound reason for departing from general contract principles in determining this contractual question. We are persuaded that attorney fees contracts, in the first instance, should be governed by the contractual doctrine of severability. However, the fiduciary relationship between attorney and client must also be considered in any decision as to whether the void attorney control provision is severable and thus whether the remaining portions of the attorney fee contract can be enforced.

■ In Utah, a provision of a contract is severable depending on the intent of the parties at the time they entered into the contract. *Management Servs. Corp. v. Development Assocs.,* 617 P.2d 406, 408 (Utah 1980); *Brown v. Board of Educ.,* 560 P.2d 1129, 1131 (Utah 1977).

This intent should be ascertained first from the four corners of the instrument itself, second from other contemporaneous writings concerning the same subject matter, and third from the extrinsic parol evidence of the intentions.

*Management Servs.,* 617 P.2d at 408 (quoting *Continental Bank & Trust Co. v. Bybee,* 6 Utah 2d 98, 306 P.2d 773, 775 (1957)).

■ In making the determination of severability, extraneous evidence as to the circumstances surrounding the execution of the agreement is also important. *Brown,* 560 P.2d at 1131; *Thomas J. Peck & Sons, Inc. v. Lee Rock Prods., Inc.,* 30 Utah 2d 187, 515 P.2d 446, 448 (1973).

If, after considering extrinsic evidence relevant to the intentions of the parties on the severability issue, the court is "still uncertain as to the intentions of the parties," any ambiguous term or provision should be construed against the drafter of the attorney fee agreement. *Wilburn v. Interstate Elec.,* 748 P.2d 582 (Utah Ct. App.1988). In *Hitchcock v. Skelly Oil Co.,* 201 Kan. 260, 440 P.2d 552, 554 (1968), the court stated, "[I]t is the general rule that in construing a contract between attorney and client, doubts are resolved against the attorney and the construction adopted which is favorable to the client." *Id.*

■ The evidence before the trial court on summary judgment concerning the intentions of Debry and Graystone as to whether the settlement control provision was key to the contingency fee agreement was ambiguous, disputed and incomplete. We cannot say that there was uncontroverted evidence before the trial court which established, as a matter of law, that the voided settlement control provision was severable from the contingency fee agreement. In fact, it is not even clear that the attorney settlement control provision was intended to cover the situation which developed—Graystone settling the lawsuit without Debry's permission. Rather, the language of the agreement seems to be aimed at the possibility that Graystone would reject a reasonable settlement offer.

Accordingly, we reverse the partial summary judgment awarding Debry the attorney fees provided under the contingency

**5.** The *Calvert* court found it unnecessary to determine whether the particular provision was invalid as against public policy. The court found it "sufficient to observe, assuming such invalidity, that in this state as in many other jurisdictions, the compensation features of the contract are not thereby deemed affected if in other respects the contract is lawful." *Calvert,* 199 P.2d at 300–01.

fee agreement and remand for a hearing to determine whether the void provision, restricting Graystone's right to settle its claims, is severable from the contingency fee agreement under the circumstances presented.[6]

If the trial court determines that the voided provision is severable, it should award Debry his attorney fees as provided for in the contingency fee agreement.[7] If, on the other hand, the court finds that the provision is not severable, the court should determine if the parties intended the contingency fee agreement to rescind and supercede the prior hourly fee contract, or whether the hourly contract was to be given effect if the contingency fee agreement failed.

■ If the court concludes that the attorney settlement control provision was not severable from the contingency fee provision and the earlier hourly fee arrangement is not controlling, this does not mean that Debry cannot recover at all. The court should in that circumstance apply the doctrine of *quantum meruit*,[8] a doctrine "rooted in justice," *Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct.App.1987).

Recovery under *quantum meruit* presupposes that no enforceable contract exists. *Id.* at 268. This doctrine has been used by courts to allow a recovery where an attorney fee contract has been voided as contrary to law. *See Potter v. Ajax Mining Co.*, 22 Utah 273, 61 P. 999, 1003 (1900) (endorsing the view that if entire contract is void then recovery under *quantum meruit* is appropriate); *see also Cummings v. Patterson*, 59 Tenn.App. 536, 442 S.W.2d 640, 643 (1968); *Mattioni, Mattioni & Mat-*

*tioni, Ltd. v. Ecological Shipping Corp.*, 530 F.Supp. 910, 914 (E.D.Pa.1982).

■ The applicable branch of *quantum meruit* is quasi-contract or a contract implied in fact. "The elements of a quasi contract or a contract implied in fact are: (1) the defendant requested the plaintiff to perform work; (2) the plaintiff expected the defendant to compensate him or her for those services; and (3) the defendant knew or should have known that the plaintiff expected compensation." *Davies*, 746 P.2d at 269. *See also Scheller v. Dixie Six Corp.*, 753 P.2d 971, 975 (Utah Ct.App. 1988). Recovery in such cases is the amount the court finds the parties reasonably intended as the contract price. *Id.*

■ The trial court in making the determination of what the parties intended the fee to be under a theory of *quantum meruit* may look at the original fee agreement. *Steinberg v. Fleischer*, 706 S.W.2d 901, 907 (Mo.Ct.App.1986); *Clark v. Coats & Suits Unlimited*, 135 Mich.App. 87, 352 N.W.2d 349, 355 (1984); *Schwartz v. Broadcast Music, Inc.*, 130 F.Supp. 956, 958 (S.D.N.Y.1955).

Another factor the trial court should consider under this equitable theory is that an attorney should generally not be allowed to benefit by recovering a fee in excess of the agreed-upon fee as a result of the insertion of a provision in an attorney fee contract which is contrary to public policy.[9] *See generally Hitchcock v. Skelly Oil Co.*, 201 Kan. 260, 440 P.2d 552, 554 (1968) (construction of fee agreement should be adopted which is most favorable to the client).

---

6. Debry also claims that he was fraudulently induced to enter the contingency agreement as an alternative argument to reverse the trial court's grant of partial summary judgment. We find his claim without a legal or factual basis and therefore reject it.

7. The fees would be the same as awarded in the trial court's initial ruling—$18,300.

8. Although Debry did not assert a claim of *quantum meruit* in his complaint, he did raise the claim in opposing the motion for partial summary judgment filed with the trial court

and he articulates this as a ground for reversing on appeal. An allegation of breach of contract is sufficient to support a *quantum meruit* claim. *Trollope v. Koerner*, 106 Ariz. 10, 470 P.2d 91, 100 (1970) (where an express contract is pleaded, it is unnecessary to plead a claim for recovery in *quantum meruit*).

9. It is important to note that whatever the trial court concludes, Graystone will still have to pay at least $18,300 to Debry. In partial settlement of this suit, Graystone waived any right to reduce the attorney fees awarded by the trial court.

■ If the amount the parties reasonably intended Debry to recover is not discernable, the court should award Debry the reasonable value of his services. *Scheller,* 753 P.2d at 975.

■ Utah appellate courts have often commented on what trial courts should consider in determining a reasonable attorney fee, and these observations are certainly relevant to a determination of the reasonable value of an attorney's services under a theory of *quantum meruit.* Factors which should be considered are the extent of services provided, the amount in controversy, the novelty and difficulty of the issues and complexity of the litigation, the reasonableness of the number of hours expended to reach the result in the case, the experience and expertise of the attorney, the fee customarily charged by other attorneys for the services performed, and how much of the work actually performed was necessary to reach the result. *Dixie State Bank v. Bracken,* 764 P.2d 985, 989–90 (Utah 1988).

In view of the number of intricately related issues presented by this appeal, we summarize the possibilities presented on remand. Initially, the court must decide, having considered evidence as to the intention of the parties, whether the void settlement control provision is severable from the balance of the contingent fee agreement. If it is, then the contingent fee arrangement stands and Debry has been paid in full. If it is not severable, then the contingent fee arrangement fails.

If the court finds that the contingent fee arrangement fails, then it must determine whether the parties actually intended that if the contingent fee arrangement did not come to fruition, the hourly arrangement previously in effect would be reactivated. If they did, Debry is entitled to compensation in accordance with that hourly fee arrangement in an amount to be proven. If the parties did not so intend, he is none-theless entitled to a reasonable fee on an implied contract theory.

The range of a permissible attorney fee award also merits comment. The parties' stipulation precludes adjustment downward. Whether the fee can be *increased* on remand depends on the court's determinations concerning the parties' intentions. If the court invalidates the contingent fee and finds that recourse to the hourly arrangement was not intended, the reasonable fee the court sets should not, unless unusual circumstances are presented, exceed the amount Debry was entitled to under the contingent fee agreement since Debry should not benefit from judicial invalidation of the very fee contract he prepared. On the other hand, if the court finds that the parties actually contemplated return to the hourly arrangement, then the contingent fee already paid would not necessarily cap the amount of the fee to be awarded. The public policy concern about the inappropriate settlement provision would simply, in this scenario, give way to the public policy interest in the enforcement of the arrangement bargained for by the parties.

In short, the fee award will probably be increased only if the settlement control provision is not severable *and* the parties intended to revert to the former hourly rate if the contingent fee arrangement failed. Otherwise, except for any necessary reconsideration of interest, the fee to emerge on remand will be exactly that which has already been paid.

### PREJUDGMENT INTEREST

■ Graystone, in its cross-appeal, claims the court improperly awarded Debry prejudgment interest on its award of attorney fees.[10] A court can properly award prejudgment interest only when the loss is fixed at a particular time and the amount of loss can be fixed with accuracy. *Jorgensen v. John Clay & Co.,* 660 P.2d 229,

---

**10.** Debry contends on appeal that Graystone waived its right to contest the award of interest by paying the interest to Debry. This claim is without merit. The settlement agreement exe-cuted by the parties clearly reserves Graystone's right to appeal the award of interest on the attorney fees and costs awarded to Debry.

233 (Utah 1983). If the court on remand determines there is neither an enforceable contingency nor hourly attorney fee contract, then prejudgment interest would be improper. *See Vasels v. LoGuidice,* 740 P.2d 1375, 1378 (Utah Ct.App.1987). Therefore, we reverse the trial court's award of prejudgment interest. The court must reassess the appropriateness of an award of prejudgment interest depending on its decision on the attorney fees issue.[11]

DAVIDSON and ORME, JJ., concur.

11. Graystone has requested an award of attorney fees on appeal, claiming Debry's appeal is frivolous. R. Utah Ct.App. 40(a). We have defined a frivolous appeal as one without reasonable legal or factual basis. *Backstrom Family Ltd. Partnership v. Hall,* 751 P.2d 1157, 1160 (Utah Ct.App.1988). We obviously do not find Debry's appeal without merit as we have reversed the trial court's granting of partial summary judgment. Thus, we deny Graystone's claim for attorney fees.